ACCEPTED
01-15-00359-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/31/2015 4:00:18 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00359-CR

IN THE FIRST COURT OF APPEALS

AT HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/31/2015 4:00:18 PM
CHRISTOPHER A. PRINE
Clerk

HESIQUIO CANTU

APPELLANT

V.

STATE OF TEXAS

APPELLEE

ON APPEAL FROM THE 35th JUDICIAL DISTRICT COURT
MILLS COUNTY, TEXAS, CAUSE NO. 2981

BRIEF FOR THE STATE OF TEXAS

ELISHA BIRD
Assistant District Attorney
35th District Attorney's Office
State Bar No.  24060339
Brown County Courthouse
Brownwood, Texas 76801
(325) 646-0444 FAX: (325) 643-4053

ORAL ARGUMENT WAIVED

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. ii

INDEX OF AUTHORITIES .......................................................... iii

LIST OF PARTIES ......................................................................vi

STATEMENT CONCERNING ORAL ARGUMENT ...........................vi

STATEMENT OF THE CASE ......................................................2

REPLY ISSUE ONE....................................................................2

STATEMENT OF FACTS ............................................................3

SUMMARY OF THE ARGUMENT ................................................5

REPLY ISSUE ONE
ARGUMENT AND AUTHORITIES.................................................7

CONCLUSION .........................................................................40

CERTIFICATE OF SERVICE .....................................................40

CERTIFICATE OF COMPLIANCE...............................................40

# INDEX OF AUTHORITIES

## STATUTES

Tex. Pen. Code §1.07 ...............................................................................................32

Tex. R. App. Proc. §33 ..............................................................................................9

Tex. R. App. Proc. §38 ............................................................................................26

Tex. R. Evid. 103 ......................................................................................................9

Tex. R. Evid. 404 ....................................................................................................12

Tex. R. Evid. 801 ....................................................................................................23

Tex. R. Evid. 803 ...............................................................................................24,28

## CASES

*Agbogwe v. State*, 414 S.W.3d 820
(Tex. App.—Houston [1st Dist.] 2013, no pet.) .....................................................11

*Alfaro v. State*, 224 S.W.3d 426
(Tex. App.—Houston [1st Dist.] 2006, no pet.) .....................................................18

*Basham v. State,* 608 S.W.2d 677 (Tex. Crim. App. 1980) .....................................9

*Bonilla v. State,* 452 S.W.3d 811 (Tex. Crim. App. 2014) ....................................18

*Buchanan v. State,* 207 S.W.3d 772 (Tex. Crim. App. 2006) ...............................17

*Delancy v. Delancy*, No. 03-12-00116-CV, 2013 WL 150302
(Tex. App.—Austin, Jan. 11, 2013).......................................................................26

*Ex parte Tanklevskaya*, No. 01-10-00627-CR, 2013 WL 4634771
(Tex. App.—Houston [1st Dist.] Aug. 27, 2013, no pet.) ......................................21

*Foster v. State,* 779 S.W.2d 845 (Tex. Crim. App. 1989) .......................................25

*Garcia v. State*, 126 S.W.3d 921 (Tex. Crim. App. 2004) .....................................24

*Gonzalez v. VATR Const. LLC*, 418 S.W.3d 777
(Tex. App.—Dallas 2013, no pet.) .......................................................................26

*Granger v. State,* No. AP-77,017, 2015 WL 1875907
(Tex. Crim. App. 2015) ..........................................................................................9

*Granviel v. State*, 552 S.W.2d 107 (Tex. Crim. App. 1976) ...............................7,20

*Henson v. State,* 388 S.W.3d 762 (Tex. App.—Houston [1st Dist.] 2012) .............8

*Hernandez v. Hernandez*, 318 S.W.3d 464 (Tex. App.—El Paso, 2010) .............26

*In re Estate of Marley*, No. 08-11-00084, 2012 WL 1715210
(Tex. App.—El Paso, May 16, 2012) ....................................................................26

*In re S.M.*, 207 S.W.3d 421 (Tex. App.—Fort Worth 2006, pet. denied) .............20

*Leday v. State,* 983 S.W.2d 713 (Tex. Crim. App. 1998) .......................................31

*Lyssy v. State,* 429 S.W.3d 37 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ....11

*Martinez v. State*, 91 S.W.3d 331 (Tex. Crim. App. 2002) ...............................18,19

*Moore v. State,* Nos. 13–12–00554–CR, 13–12–00555–CR,
13–12–00556–CR, 2013 WL 4773192 (Tex. App.—Corpus Christi Sept. 5, 2013,
pet. ref'd) ...........................................................................................................24,25

*Munoz v. State,* 288 S.W.3d 55
(Tex. App.—Houston [1st Dist.] 2009, no pet.) .................................................29,30

*Neal v. State,* 256 S.W.3d 264 (Tex. Crim. App. 2008) .........................................14

*Pena v. State*, 285 S.W.3d 459 (Tex. Crim. App. 2009) ..............................11,18,20

*Puckett v. U.S.*, 556 U.S. 129 (2009) ..................................................................8,16

*Ramirez v. State,* 815 S.W.2d 636 (Tex. Crim. App. 1991) ......................................9

*Resendez v. State,* 306 S.W.3d 308 (Tex. Crim. App. 2009) ..................................18

*Reyna v. State,* 168 S.W.3d 173 (Tex. Crim. App. 2005) ..................................18,19

*Ruiz v. State,* No. 14-05-00757-CR, 2007 WL 2239289,
(Tex. App.—Houston [14th Dist.] Aug. 7, 2007, pet. ref'd) ..................................9

*Sauceda v. State*, 129 S.W.3d 116 (Tex. Crim. App. 2004) ................................7,33

*Shuffield v. State,* 189 S.W.3d 782 (Tex. Crim. App. 2006) ............................23,25

*Smith v. State,* 200 S.W.3d 644
(Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) ..................................7

*Sonnier v. State*, 913 S.W.2d 511 (Tex. Crim. App. 1995) ..................................25

*Vasquez v. State,* 453 S.W.3d 555
(Tex. App.—Houston [14th Dist.] 2015, pet. granted) ..........................................20

*Wintters v. State*, 616 S.W.2d 197 (Tex. Crim. App. 1981) ..................................25

## OTHER SOURCES

Stephen Goode, *et al.*, TEXAS PRACTICE: GUIDE TO THE TEXAS
RULES OF EVIDENCE: CIVIL AND CRIMINAL §103.2 (3d ed.) ....................18

# LIST OF PARTIES

Pursuant to Rule 74(a) of the Texas Rules of Appellate Procedure the State lists the names and addresses of all parties to the Trial Courts final judgment and their trial counsel in the trial court.

1.      Hesiquio Cantu,
        c/o Institutional Division, Texas Department of Criminal Justice

        Trial Counsel
        Judson Woodley, Attorney at Law
        P.O. Box 99 Comanche, Texas 76442

        Emily Miller, Attorney at Law
        707 Center Ave., Brownwood, Texas 76801

        Appellate Counsel
        Connie J. Kelley, Attorney at Law
        1108 Lavaca #110-221, Austin, Texas 78701

2.      The State of Texas

        Trial &Appellate Counsel
        Elisha Bird, Assistant District Attorney
        35th Judicial District
        200 S. Broadway, Suite 323
        Brownwood, Texas 76801

        Micheal Murray, District Attorney
        35th Judicial District
        200 S. Broadway, Suite 323
        Brownwood, Texas 76801

## STATEMENT CONCERNING ORAL ARGUMENT

The State does not request oral argument.

NO. 01-15-00359-CR

IN THE FIRST COURT OF APPEALS

AT HOUSTON, TEXAS

---

HESIQUIO CANTU

APPELLANT

V.

STATE OF TEXAS

APPELLEE

---

ON APPEAL FROM THE 35th JUDICIAL DISTRICT COURT
MILLS COUNTY, TEXAS, CAUSE NO. 2981

---

BRIEF FOR THE STATE OF TEXAS

---

TO THE HONORABLE COURT OF APPEALS:

## STATEMENT OF THE CASE

Appellant was indicted on January 8, 2014 for Assault Family Violence – Occlusion against Helen Pacheco. C.R. p. 13. The State filed a motion to cumulate sentences on February 20, 2015. C.R. p. 159.

A jury trial began on February 24, 2015. R.R. Vol. 2, p. 1 - Stephens. [1] On February 25, 2015, the jury found Appellant guilty of Assault Family Violence – Occlusion as alleged in the indictment. C.R. pp. 178, 188-89.

A punishment hearing was held before the trial judge. R.R. Vol. 5, pp. 4-23 - Stephens. The trial judge assessed punishment at six (6) years confinement in the Institutional Division of the Texas Department of Corrections and granted the State's motion to cumulate sentences. R.R. Vol. 5, p. 23 - Stephens.

## REPLY ISSUE ONE

Appellant failed to preserve error on any claim that the trial court erred in ruling on the admissibility of medical records.

Additionally, the trial court did not err in stating that all or none of the medical records could be admitted due to Appellant's failure to segregate the admissible and non-admissible portions of the medical record.

---

[1] Both Cristi Escobar and Edwin Stephens prepared Reporter's Records in this case. Citations to "- Stephens" refer to the record prepared by Edwin Stephens.

No error would have been committed in admitting the record as even Appellant's objections raised in his brief were inapplicable to the vast majority of the medical records.

Furthermore, Appellant was not harmed by the trial court's decision about the admissibility of the medical records.

## STATEMENT OF FACTS

Appellant and Helen Pacheco were involved in a romantic relationship. R.R. Vol. 4, p. 23 - Stephens. Appellant and Helen came to Mills County on Christmas Eve of 2013 to spend the holiday with Appellant's cousin. R.R. Vol. 4, pp. 24-25 - Stephens.

By nine o'clock on Christmas morning, Appellant was already drinking beer. R.R. Vol. 4, p. 27 - Stephens. Helen confronted Appellant about drinking so early in the day, and Appellant told her that "he was there to have a good time with his cousin and he didn't want [her] to f--- it up for him." R.R. Vol. 4, pp. 27-28 - Stephens. Appellant continued to drink beer and tequila throughout the day. R.R. Vol. 4, pp. 28, 30 - Stephens.

When Appellant and Helen went to bed on Christmas evening, Appellant took his pants off, crawled into bed and then began hitting Helen in the face. R.R. Vol. 4, p. 33 - Stephens. Appellant strangled Helen, bit her on the face above her

eyebrow, and punched her eye.  *See* R.R. Vol. 3, pp. 21-22, 29, 50-51, 53-54, 59 – Stephens; R.R. Vol. 4, p. 37 - Stephens. R.R. Vol. 6, (photos of victim) - Stephens.

Appellant strangled Helen so tightly that Helen began shaking and thought that Appellant was going to kill her and she would go to Heaven.  R.R. Vol. 4, pp. 35-36 - Stephens.  Appellant told Helen that he was going to kill her.  R.R. Vol. 4, p. 37 - Stephens.

The only thing that stopped the assault was Appellant passing out from intoxication.  *See* R.R. Vol. 4, pp. 37-38 - Stephens.

Helen was beaten so badly that her eye was swollen to the size of a golfball and bruised dark purple shortly after the assault.  R.R. Vol. 3, pp. 21-22 – Stephens; R.R. Vol. 4, p. 14 – Stephens; R.R. Vol. 6, (photos of victim) – Stephens.  The assault was also so bad that Helen was also bleeding from her eye area.  R.R. Vol. 3, pp. 21-22 – Stephens; R.R. Vol. 6, (photos of victim) - Stephens.

Red marks resembling finger marks were visible on Helen's throat when law enforcement and EMS arrived.  R.R. Vol. 3, pp. 22, 54-57 – Stephens; R.R. Vol. 4, p. 14 - Stephens.  Law enforcement also observed Appellant so intoxicated that he had passed out lying on his bed without any pants on his body.  R.R. Vol. 3, pp. 25-26, 34, 38, 61 - Stephens.

4

Law enforcement also observed where blood from Helen's face had dripped onto the pillow beneath her. R.R. Vol. 3, p. 34 - Stephens. Appellant was lying on the opposite side of the bed from where the bloodstained pillow was located. R.R. Vol. 3, p. 34 - Stephens.

When he was woken up, Appellant had Helen's blood on his face and his teeth. R.R. Vol. 3, pp. 34-35, 59 - Stephens. The blood appeared to be transferred blood that came from Helen's injuries and was not Appellant's blood. R.R. Vol. 3, pp. 57-60- Stephens.

At the time law enforcement responded, Appellant claimed that he did not know how he got blood on his shirt or face. R.R. Vol. 3, p. 28 - Stephens.

## SUMMARY OF THE ARGUMENT

Appellant has failed to preserve error on his complaint about the trial court's actions relating to the admissibility of the medical records for three separate reasons:

1) Appellant failed to pursue his objection until he obtained an adverse ruling;

2) Appellant's trial objection does not comport with his complaint on appeal; and

5

3) When objecting during the trial to the admissibility of the entirety of the medical records, Appellant failed to segregate and identify to the trial court the portion of the medical records that he believed were inadmissible.

Appellant's complaints on appeal regarding business records, statements made for medical diagnosis or treatment, and the rule of optional completeness only apply to very limited portions of the medical records. The vast majority of the medical records were admissible, regardless of the Rule of Optional Completeness, as relevant non-hearsay evidence.

Even if this Court were to conclude that the trial court did err, Appellant was not harmed by the trial court's decision not to admit the one small portion of the medical records Appellant initially offered because: (1) all of the physical evidence supported the victim's claims; (2) the jury was able to directly evaluate the credibility of Appellant's explanation for what happened since Appellant testified during the guilt-innocence phase of the trial; and (3) evidence similar to the portion of the medical records Appellant asked to have admitted was testified to by other witnesses.

# REPLY ISSUE ONE
# ARGUMENT AND AUTHORITIES

## *Standard of Review*

A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004) (en banc). A reviewing court should not reverse unless a clear abuse of discretion is shown. *Smith v. State,* 200 S.W.3d 644, 649 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

Admission or exclusion of evidence is not reversible error absent a showing of harm to the complaining party. *Granviel v. State*, 552 S.W.2d 107, 122 (Tex. Crim. App. 1976).

## *Waiver*

Appellant has waived any error related to the admission of the medical records because: (1) he failed to obtain an adverse ruling; (2) his objection at trial does not comport with his claim on appeal; and (3) he failed to segregate the admissible or non-admissible portion of the document being offered.

## *Preservation of Error*

The Supreme Court has stated that no procedural principle is more familiar to the Court than that a right may be forfeited in criminal cases by the failure to

make timely assertion of the right before a tribunal having jurisdiction to determine it. *Puckett v. U.S.*, 556 U.S. 129, 134 (2009) (quoting *Yakus v. U.S.*, 321 U.S. 414, 444 (1944)).[2]

Anyone familiar with the trial process understands that errors are a constant during that process and that most errors do not matter. *Id.* (quoting *U.S. v. Padilla*, 415 F.3d 211, 224 (1st Cir. 2005)). Therefore, a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal to the judicial system. *Id.*

Generally, to preserve a complaint for appellate review, the complaining party must make a timely request, objection, or motion that states the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, and the trial court must rule on the request, objection or motion. Tex. R. App. P. 33.1; *Henson v. State,* 388 S.W.3d 762, 770 (Tex. App.—Houston [1st Dist.] 2012) *aff'd* 407 S.W.3d 764 (Tex. Crim. App. 2013).

Additionally, a party may only claim error in a ruling admitting or excluding evidence if the error affects a substantial right of the party and, if the ruling excludes evidence, a party informs the court of its substance by an offer of proof,

---

[2] Although *Puckett* was decided on federal preservation of error grounds, the introductory explanation for the basis of preservation of error rules is written in a manner that applies to all preservation of error rules.

unless the substance was apparent from the context. Tex. R. Evid. 103(a)(2) (West 2015).

In order to preserve an argument regarding the exclusion of evidence, the proponent of the evidence must have actually attempted to introduce the evidence during trial and the trial court must have excluded the evidence. *Ruiz v. State,* No. 14-05-00757-CR, 2007 WL 2239289, at *3 (Tex. App.—Houston [14th Dist.] Aug. 7, 2007, pet. ref'd). *See Basham v. State,* 608 S.W.2d 677, 679 (Tex. Crim. App. 1980).

*Adverse Ruling*

In order for error to be preserved, a trial court must either (1) expressly or implicitly rule on a request, objection, or motion; or (2) refuse to rule on the request, objection or motion and the complaining party then objected to the refusal. Tex. R. App. Proc. 33.1(2) (West 2015).

To preserve error, the trial judge's ruling must be conclusory; that is, it must be clear from the record that the trial judge did in fact overrule the defendant's request. *Ramirez v. State,* 815 S.W.2d 636, 643 (Tex. Crim. App. 1991) (en banc); *Granger v. State,* No. AP-77,017, 2015 WL 1875907, at *4 (Tex. Crim. App. 2015) (en banc) (not designated for publication).

9

Appellant offered one page of the medical records outside the jury's presence. R.R. Vol. 4, pp. 67-68 - Stephens. The trial judge did not make a final ruling on Appellant's offer. *See* R.R. Vol. 4, pp. 68-71 - Stephens. Rather, the trial judge offered Appellant options – either the entire medical record could come in or none of it could come in. R.R. Vol. 4, pp. 69-70 - Stephens.

Appellant's attorney did not respond at all to the options presented by the trial judge:

THE COURT: All or none?

MR. WOODLEY: So what you're saying is the entire thing or none?

THE COURT: That's the way I see it. Under the Rule of Optional Completeness, I think they're entitled to put it all in. We're just not going to start redacting. You don't want him redacting, you don't want her to redact, so --

MS. BIRD: I think maybe we can agree that all of page one of three should come in.

MR. WOODLEY: Well, I don't agree with that.

THE COURT: Okay. Then I think we know where we're at. Let's bring the jury in. R.R. Vol. 4, pp. 70-71 - Stephens.

Appellant failed during this exchange to obtain from the judge any ruling or refusal to rule. The trial judge did not admit or refuse to admit the medical records. Appellant failed to pursue his objection until he received an adverse ruling therefore he has waived his complaint on this issue.

10

As a result of this waiver, this Court shall affirm Appellant's conviction as no issue was preserved for review.

*Trial Objection Does Not Comport With Appellate Complaint*

Furthermore, Appellant has not preserved error for this Court to review because Appellant's trial objection does not comport with his complaint on appeal.

In addition to obtaining an adverse ruling, in order to preserve error, a complaint on appeal must comport with the complaint made at trial. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009).

To determine whether the appellate complaint is consistent with the trial complaint, an appellate court should consider the context in which the complaint was made and the parties' shared understanding at that time. *Id.*; *Agbogwe v. State*, 414 S.W.3d 820, 829 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

An objection stating one legal theory may not be used to support a different legal theory on appeal. *Lyssy v. State,* 429 S.W.3d 37, 40 (Tex. App.—Houston [1st Dist.] 2014, no pet.). When context shows that a party failed to effectively communicate his argument, then the error will be deemed forfeited on appeal. *Id.*

Only when there are clear contextual clues indicating that the party was, in fact, making a particular argument will that argument be preserved. *Id.*

11

Appellant objected at trial to (1) hearsay within the medical records and (2) under Texas Rule of Evidence 404(b) which generally excludes extraneous offenses. *See* R.R. Vol. 4, pp. 67-71 – Stephens; Tex. R. Evid. 404(b) (West 2015). Appellant complaints were entirely rooted in evidentiary issues. Appellant did not make any objections to the procedure occurring during trial or to the trial judge's actions.

Appellant objects on appeal to how the trial judge proceeded in response to issues about the admissibility of the medical records and is not raising an evidentiary objection. *See Brief for Appellant,* p. 1, 4-5. This can be seen in the phrasing of Appellant's Point of Error. Appellant says "The *trial court erred in ruling* that the complainant's hearsay statement included in her hospital records *would be admissible if Appellant offered any part* of the records into evidence." *Brief for Appellant*, p. 5.

When looking at the context of the trial objection and the parties' understanding at the time, this appellate court should look at the timing of the objections lodged to see the full context.

The only time hearsay was mentioned by Appellant's trial counsel in the entire exchange related to the medical records was when Appellant first offered a small portion of the records. *See* R.R. Vol. 4, p. - Stephens. As he was initially offering a small portion of the record, Appellant's trial counsel said:

12

I don't agree that everything in those records is admissible because there is a lot of hearsay in there…. I want to offer that one page, but unfortunately, at the top of the page, it's got a bunch of hearsay from her where she's basically talking about what she says happened that night, so I'd like to redact that top portion and only offer this one page for the limited purpose of the actual medical record." R.R. Vol. 4, p. 68 - Stephens.

This is the only reference to hearsay made by Appellant's trial counsel in relation to the medical records. *See* R.R. Vol. 4, p. 67-71 - Stephens.

The State responded to Appellant's statement that the exhibit included hearsay by pointing to the hearsay exceptions for statements made for medical diagnosis or treatment and records of a regularly conducted activity ("business records"). R.R. Vol. 4, pp. 68-69 - Stephens. The State also requested that the entire exhibit be admitted under the Rule of Optional Completeness. R.R. Vol. 4, p. 69 - Stephens.

Appellant never made any response at all to the State's articulated exceptions to hearsay that could apply, nor did Appellant ever make any claim that the Rule of Optional Completeness would not apply. *See* R.R. Vol. 4, pp. 67-71 - Stephens.

The trial judge responded to both Appellant and the State by saying that either the entire medical record would be admitted or none of it. R.R. Vol. 5, p. 69 - Stephens.

Complaints are timely only if the party makes the complaint as soon as the grounds for the complaint become apparent. *Neal v. State,* 256 S.W.3d 264, 279 (Tex. Crim. App. 2008).

The ground for complaining that the trial judge's acted inappropriately in saying he would admit all or none of the medical record became apparent to Appellant's counsel when counsel asked the trial judge "So what you're saying is the entire thing or none?" and the trial judge responded "That's the way I see it." R.R. Vol. 4, p. 70 - Stephens.

Once Appellant's counsel realized that the trial judge was offering him an option between all of the medical record coming in or none of it coming in, Appellant's counsel did not object to these options as being incorrect or invalid. *See* R.R. Vol. 4, pp. 70-71 - Stephens. In fact, Appellant did not object at all once he realized what position the trial court was taking. *See* R.R. Vol. 4, pp. 70-71 - Stephens.

Appellant complains now on appeal however, that these options giving by the trial judge were incorrect options. Appellant states in his brief:

> [The trial judge] ruled it was all admissible under the Rule of Optional Completeness and that it was all coming in or not at all. This ruling was in error. *Brief for Appellant*, p. 6 (internal citations omitted).

This disconnect between the trial objection and the complaint on appeal can be distinctly seen in the arguments presented in Appellant's brief.

Appellant's entire brief is built on the premise that the State was wrong about the application of the articulated hearsay exceptions and the application of the Rule of Optional Completeness. A large portion of Appellant's brief is devoted to relating why Appellant does not believe the medical records are business records or statements made for medical diagnosis or treatment. *See Brief for Appellant,* pp. 7-15.

However, none of these arguments were made at all on the trial court level. The words "business record," "statements made for the purposes of medical diagnosis," and "rule of optional completeness" were not uttered once by Appellant's trial counsel in relation to the discussion of the medical records. *See* R.R. Vol. 4, pp. 67-71 - Stephens.

The very nature of Appellant's explanations for why these exceptions should not apply reinforces the point that error was waived in the trial court. In his brief, Appellant points out that to determine if a statement is made for medical diagnosis or treatment a court should consider the declarant's motive and also whether the content is such that would be reasonably relied upon by healthcare providers in diagnosis or treatment. *See Brief for Appellant*, pp. 11-12.

Since Appellant never claimed that these exceptions would not apply to the medical records in this case, the State was never afforded a chance to put on this

evidence and, likewise, the trial court was never afforded a chance to consider these factors.

Appellant's brief states:

- "In the instant case, the State failed to show that Complainant would not have received the same diagnosis and treatment regardless whether Appellant was the one responsible for her injuries and regardless whether he hit her without justification… or struck her in self-defense." *Brief for Appellant*, p. 13;

- "The record fails to show that Complainant's motive in making the statement was not consistent with the purpose of promoting treatment." *Brief for Appellant*, p. 15;

- "The State did not meet its burden to establish the predicate facts for admission of Complainant's hearsay statement in the hospital record under Rule 803(4)" *Brief for Appellant*, p. 15; and

- "Appellate courts cannot presume predicate facts …" *Brief for Appellant*, p. 15.

The trial court never had an opportunity to consider or resolve these types of claims as Appellant's trial counsel never once made these types of claims.

The very purpose of the contemporaneous-objection rule is to prevent a litigant from sandbagging the court. *Puckett v. U.S.*, 556 U.S. 129, 134 (2009). Sandbagging allows the litigant to remain silent about his objection and belated raise the error only if the case does not conclude in his favor. *Id.*

The limitations imposed by the preservation of error rules are designed to induce the timely raising of claims and objections so that a trial court may have an opportunity to consider and resolve them. *Id.* The trial court is then often able to

16

correct or avoid the mistake so that it cannot possibly affect the ultimate outcome. *Id.*

When an objection is not specific and the legal basis is not obvious, it does not serve the purpose of the contemporaneous-objection rule for an appellate court to reach the merits of a forfeitable issue that is essentially raised for the first time on appeal. *Buchanan v. State,* 207 S.W.3d 772, 775 (Tex. Crim. App. 2006).

As Appellant did not raise these claims in the trial court, should this Court hold that error is preserved, the end result would be to undermine the preservation of error rules and allow Appellant to succeed in sandbagging and undermining the entire criminal justice process.

Therefore, the State asks that this Court rule that the complaints raised on appeal do not comport with the objections at trial and therefore, no error has been preserved for review.

*Failure to Segregate Admissible/Non-Admissible Portion*

Furthermore, Appellant also failed to properly preserve error by failing to segregate the non-admissible portion of the medical records so that the trial court could appropriately rule in any manner other than simply all or nothing. As the burden to preserve this error lies on the losing party, Appellant should suffer the results of an insufficient objection.

The basic principle that runs through all doctrines about preserving error is party responsibility. *Reyna v. State,* 168 S.W.3d 173, 176-77 (Tex. Crim. App. 2005); Stephen Goode, *et al.*, TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL [*hereinafter* Goode, TEXAS PRACTICE] §103.2 (3d ed.).[3] It is not the role of the trial judge to limit or exclude evidence as provided by evidence law, except insofar as the party opposing the evidence precisely and timely requests that he do so. Goode, TEXAS PRACTICE §103.2.

The party with the responsibility regarding any particular evidence is always the party complaining on appeal. *Id.* These rules relating to preservation of error are neutral between the proponent and opponent of admitting evidence. *Id.* Rather, the rules limiting the preservation of error serve to favor the trial judge. *Id.*

Specifically, Rule 33.1 of the Texas Rules of Appellate Procedure serves as a judge-protecting rule. *Reyna*, 168 S.W.3d at 177. The parties therefore, and not the judge, are responsible for the correct application of evidentiary rules. *Resendez v. State,* 306 S.W.3d 308, 313 (Tex. Crim. App. 2009).

---

[3] Although Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal is not in and of itself binding on this court, the Court of Criminal Appeals has repeatedly endorsed the reasoning in this particular section of the Guide. *See Bonilla v. State,* 452 S.W.3d 811, 817 (Tex. Crim. App. 2014); *Pena v. State,* 285 S.W.3d 459, 463-64 (Tex. Crim. App. 2009); *Reyna v. State*, 168 S.W.3d 173, 176-79 (Tex. Crim. App. 2005); *Martinez v. State*, 91 S.W.3d 331, 335-36 (Tex. Crim. App. 2002). Additionally, this Court has also recognized the principle of party responsibility. *See Alfaro v. State*, 224 S.W.3d 426, 433 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Therefore, when the context shows that a party failed to effectively communicate his argument, then the error will be deemed forfeited on appeal. *Id.*

The Court of Criminal Appeals has recognized the benefit of this system in that it puts the burden on parties to have a lawful trial that does not burden the judicial system with appeal and retrial. *Martinez v. State,* 91 S.W.3d 331, 336 (Tex. Crim. App. 2002). The purpose of requiring a specific objection is to give the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection. *Reyna*, 168 S.W.3d at 179.

The issue on appeal is not whether the trial court's ruling is legally "correct" in every sense, but rather, whether the complaining party brought to the trial court's attention the very complaint that party is now making on appeal. *Id.* at 177.

In order to meet this burden, the party complaining on appeal about a trial court's admission or exclusion of evidence must have, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule in question and its precise and proper application to the evidence in question. *Martinez,* 91 S.W.3d at 336. It is not enough that the party complaining on appeal told the judge merely that evidence was admissible or objectionable. *See Reyna*, 168 S.W.3d at 177.

The complaining party has the obligation, not only to relay a particular legal complaint, but also to convey the precise and proper *application of the law* as well

as the underlying rationale. *See Pena v. State*, 285 S.W.3d 459, 463-64 (Tex. Crim. App. 2009) (emphasis added). A trial court's decision should not be reversed on a theory upon which the non-appealing party did not have an opportunity to develop a complete factual record. *Vasquez v. State,* 453 S.W.3d 555, 578 (Tex. App.—Houston [14th Dist.] 2015, pet. granted).

A trial court need never sort through challenged evidence in order to segregate the admissible evidence from the excludable evidence. *In re S.M.*, 207 S.W.3d 421, 424 (Tex. App.—Fort Worth 2006, pet. denied). If evidence is offered and challenged that contains both admissible and excludable evidence, the trial court may safely admit it all or exclude it all. *Id.*

It is not error to overrule an objection that is too general to advise the trial court of that portion of the exhibit to which the objection is directed. *Granviel v. State,* 552 S.W.2d 107, 121-22 (Tex. Crim. App. 1976).

Critically, the example used by Professors Goode, Wellborn and Sharlot to demonstrate party responsibility is exactly the same as the case at bar. The Professors illustrate party responsibility by stating:

> The idea that responsibility rests upon both parties may be illustrated by the following example. Suppose proponent offers a group of documents, some of which are competent evidence and some of which are inadmissible hearsay. Opponent objects to the entire offer on the ground of hearsay. In this state of the record, the trial judge can do no wrong, in the sense that he may either sustain or overrule the objection and either ruling will be invulnerable on appeal. If he sustains the objection, excluding the competent documents along with

the incompetent, the proponent may not successfully complain on appeal that his competent evidence was excluded, even though it was. He will be told by the appellate court that it was his responsibility to separate the admissible from the inadmissible parts of the offer, and an objection that was good as to part of the unsegregated mass may be sustained as to all. On the other hand, if the trial judge overrules the overbroad objection, admitting the incompetent portions of the offer along with the competent, the ruling will be equally impervious to review on appeal by the objector. He will be told that his objection to the whole offer, which did not point out precisely which parts were inadmissible, was properly overruled if any part of the offer was admissible.

This example shows how the responsibilities of both parties in the invocation and application of evidence rules are independent of one another. A party who wishes to complain on appeal must have fully acquitted his responsibilities to alert the trial judge to the proper rule and its proper application. If he failed to do so he is barred from complaint, and it is immaterial that the other party below also failed in his coordinate responsibilities. Goode, TEXAS PRACTICE §103.2 (internal citations omitted).

This appellate court also has endorsed placing the burden on the losing party to ensure that error is properly preserved. *See Ex parte Tanklevskaya*, No. 01-10-00627-CR, 2013 WL 4634771, at *4 (Tex. App.—Houston [1st Dist.] Aug. 27, 2013, no pet.).

Appellant is the losing party in the trial court in this case. Therefore, the burden is on Appellant to have fully acquitted his responsibilities to alert the trial judge as to the proper rules involved in this case and also the proper application of those rules.

Appellant offered one page from the medical records. R.R. Vol. 4, p. 68 - Stephens. The State offered the rest of the medical records under the Rule of Optional Completeness. R.R. Vol. 4, p. 69 - Stephens.

Appellant made a general hearsay objection to the entirety[4] of the medical records being offered by the State. *See* R.R. Vol. 4, p. 68 - Stephens. Appellant even agreed at trial that portions of the medical record other than the portion he offered would be admissible. R.R. Vol. 4, p. 68 – Stephens ("…I do agree that the actual diagnosis and actual medical notes from the doctors or doctor is admissible under the Business Records Affidavit…").

When the State offered the rest of the medical records under the rule of optional completeness, Appellant failed to identify which parts of the rest of the medical records he believed should be excluded as hearsay.

The trial judge, therefore, had before it a record which appeared to contain both competent evidence and inadmissible hearsay. Appellant, as the opponent to admission of the entire record, objected generally on the grounds of hearsay but failed to identify which specific statements throughout the record constituted inadmissible hearsay.

---

[4] The State actually only offered a portion of the medical records also. R.R. Vol. 4, pp. 69-70 - Stephens. This distinction is not critical to the analysis.

Based on Appellant's failure to segregate out the medical records, the trial judge then could do no wrong. He could either admit the entire exhibit or could sustain the objection and exclude the entire exhibit.

Although the trial judge did not do either in this case,[5] he correctly recognized that these were the options that existed and communicated those options to the parties. The trial judge's decision is therefore impervious to review on appeal because Appellant did not precisely point out which parts were inadmissible.

Therefore, the State asks this Court to hold that Appellant failed to segregate out the inadmissible portions of the medical records sufficiently to preserve error. If error was not preserved, this Court should affirm the conviction.


## *Hearsay*

The trial judge would not have erred in admitting the entire medical record.

Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is only admissible when expressly authorized by statutes or rules. *See Shuffield v. State,* 189 S.W.3d 782, 790 (Tex. Crim. App. 2006).

---

[5] *See* the previous section related to how Appellant failed to pursue his objection all the way to an adverse ruling.

23

*Business Record*

Rule 803 of the Texas Rules of Evidence expressly authorizes the admission of business records. *See* Tex. R. Evid. 803 (6). A business record is admissible if, an affidavit that complies with Rule 902(10) of the Rules of Evidence shows that (1) the record was made at or near the time by –or from information transmitted by—someone with knowledge; (2) the record was kept in the course of a regularly conducted business activity; and (3) making the record was a regular practice of that activity; and the opponent of the evidence fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. *Id.*

Appellant does not contest the fact that the medical records are business records, but functionally raises a "hearsay within hearsay" objection in his brief claiming that "information in business records can be excluded even if the requirements of Rule 803(6) have been met." *See Brief for Appellant*, p. 8.

Appellant cites extensively to *Garcia v. State* as support for this claim. *See Brief for Appellant*, pp. 8-10. However, this case should be distinguished from *Garcia v.State* and viewed as similar to *Moore v. State*.

In *Garcia*, no preservation of error issue was presented. *See Garcia v. State*, 126 S.W.3d 921, 925-27 (Tex. Crim. App. 2004).

24

In *Moore v. State*, the defendant raised hearsay objections to business records under the principles set out in *Garcia*. *See Moore v. State,* Nos. 13–12–00554–CR, 13–12–00555–CR, 13–12–00556–CR, 2013 WL 4773192, at *4 (Tex. App.—Corpus Christi Sept. 5, 2013, pet. ref'd) (not designated for publication). However, the court of appeals held that the objections were properly overruled because portions of the exhibits were admissible and the defendant had failed to specifically refer to the challenged material to apprise the trial court of the exact objection. *Moore*, 2013 WL 4773192, at *5-6.

*Moore* relied on the authority of *Sonnier v. State*, *Wintters v. State,* and *Foster v. State*, all Court of Criminal Appeals cases, which affirm the concept that a general objection to an exhibit is not sufficient to preserve error when portions of the exhibit are admissible and portions are not. *See Moore*, 2013 WL 4773192, at *5-6; *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995) (en banc); *Foster v. State,* 779 S.W.2d 845, 858 (Tex. Crim. App. 1989) (en banc); *Wintters v. State*, 616 S.W.2d 197, 202 (Tex. Crim. App. 1981).

At trial Appellant did not attempt to identify portions of the medical records that would not qualify as a business record. *See* R.R. Vol. 4, p. 67-71 - Stephens. Appellant still in his brief does not attempt to apply the law he cites to the medical records to show this Court which portions of the medical records would not be admissible.

Failure to properly brief an argument results in waiver of that argument. *Delancy v. Delancy*, No. 03-12-00116-CV, 2013 WL 150302, at \*4 (Tex. App.—Austin, Jan. 11, 2013) (mem. op.) (no pet. h.); *In re Estate of Marley*, No. 08-11-00084, 2012 WL 1715210, at \*2 (Tex. App.—El Paso, May 16, 2012) (pet. denied); *Hernandez v. Hernandez*, 318 S.W.3d 464, 466 (Tex. App.—El Paso, 2010) (no pet. h.). A party asserting error on appeal must put forth some specific argument and analysis showing that the record and the law support his contention. *Gonzalez v. VATR Const. LLC*, 418 S.W.3d 777, 784 (Tex. App.—Dallas 2013, no pet.).

A brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. Tex. R. App. Proc. §38.1. Although Appellant had cited numerous cases and authority, Appellant has made no attempt to cite to the record to apply those rules specifically to the medical records at issue. Such a failure to apply the law to the facts makes it virtually impossible for the State to respond as there is no way to engage the claim that some portions of the medical records do not qualify as business records when there is no assertion as to which portions do not qualify.

Furthermore, the State would assert that the vast majority of the medical records are admissible as business records, even assuming the best possible argument for Appellant. Presuming that Appellant objects to places in the medical

26

records that document the victim's statements to the hospital, the records still contain the following portions that such a hearsay objection would have no relation to:

- Triage assessment;
- Vital signs;
- ED Course;
- Administered medications;
- Outcome;
- Significant portions of the Nurse's notes;
- ROS;
- Exam;
- Laceration;
- MDM;
- Dispensed medications;
- Disposition;
- Signatures;
- Discharge instructions;
- Follow-up instructions;
- Prescriptions;
- Conditions of admission and authorization for medical treatment;
- Patient's bill of rights. C.R. pp. 54-55, 57-60, 75-85.[6]

There is also included within the medical records a radiology report, chemistry report, hematology report, urine chemistry report, coagulation report and photographs. C.R. pp. 61-66, 69-74. Appellant's hearsay objection based on hearsay within a business record has no application whatsoever to these reports and photographs. Appellant's own brief provides a tacit acknowledgement of this when Appellant cites to a portion of *Skillern & Sons, Inc. v. Rosen* which

---

[6] These are the section titles used by the hospital itself within the records.

27

acknowledges that information within a doctor or nurse's personal knowledge is admissible as part of a business record. *See Brief for Appellant*, p. 10.

Therefore, even assuming the best possible argument for Appellant and assuming that error was preserved, the objectionable portions of the medical records for containing hearsay within the business record is minimal at best. The trial court did not err in stating that he would either admit all of the record or none of the record in light of the fact that the vast majority of the medical record was admissible and Appellant failed to properly identify and object to the portions of the medical record that would constitute inadmissible hearsay.

If the trial court did not err, then this Court should affirm Appellant's conviction.

*Statements Made for Medical Diagnosis or Treatment*

Rule 803 of the Texas Rules of Evidence also expressly authorizes the admission of statements made for medical diagnosis or treatment. Tex. R. Evid. 803 (4). A statement made for medical diagnosis or treatment is a statement that (1) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (2) describes medical history; past or present sensations; their inception; or their general cause. *Id*.

Rule 803(4) is premised on the declarant's desire to receive an appropriate medical diagnosis or treatment, and the assumption that the declarant appreciates that the effectiveness of the diagnosis or treatment may depend on the accuracy of the information provided. *Munoz v. State,* 288 S.W.3d 55, 58 (Tex. App.— Houston [1st Dist.] 2009, no pet.).

While a declarant's motive in making the statement must be consistent with the purpose of promoting treatment, the witness need not expressly state that the hearsay declarant recognized the need to be truthful in her statements for the medical treatment exception to apply. *Id.*

The reviewing court must look to the record[7] to determine if it supports a conclusion that the declarant understood the importance of honesty in the context of medical diagnosis and treatment. *Id.*

Appellant claims that evidence exists to show that she had "motives to place the blame on Appellant, such as taking his money and his car." *Brief for Appellant*, p. 15. However, no evidence supports these claims being a motive for her to lie to the hospital.

First, no evidence was admitted that Helen actually took any money belonging to Appellant after the assault. *See* R.R. Vol. 4, pp. 54-55- Stephens.

---

[7] The State believes that the record was not properly developed in this case because Appellant never made any claim that this hearsay exception would not apply and therefore the State did not have opportunity to present evidence on this issue and the trial judge did not evaluate this claim. The State believes that this lack of a record on this issue supports its claim that error was not properly preserved.

Additionally, Helen only took Appellant's car because that was her only method of driving home. R.R. Vol. 4, pp. 58-59 – Stephens. These facts hardly constitute a motive to lie to a doctor.

Additionally, when looking at how significantly Helen was injured, her motive to be honest with the treating physician should be apparent. Her injuries were so significant that her own "selfish motive for truthfulness" could be trusted. *See Munoz*, 288 S.W.3d at 58.

As there was no evidence indicating that these statements were improperly motivated or not made for the purpose of receiving appropriate diagnosis or treatment,[8] the entirety of the medical records were appropriately considered admissible by the trial judge. As the trial judge thus did not err, Appellant's conviction should be affirmed.

*Harmless Error Regarding Statements Attributing Fault*

Furthermore, Appellant's complaint is basically that statements about fault are not admissible as statements made for purposes of medical diagnosis or treatment. *See Brief of Appellant*, pp. 12-15. However, the first evidence about statements Helen made to the hospital regarding fault came from Appellant himself.

---

[8] The State also believes, as it did with the business records argument, that Appellant's argument would not apply to the vast majority of the medical records in this case.

30

Appellant's trial counsel cross-examined Helen regarding her statements to the hospital that Appellant was beaten up by her fiancé. R.R. Vol. 4, pp. 50-51 - Stephens.

It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged. *Leday v. State,* 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) (en banc). Therefore, it was not reversible error for the trial judge to rule that the entirety of the medical records were admissible even if some of Helen's statements regarding fault were not statements made for the purpose of medical diagnosis or treatment because Appellant himself had already cross-examined Helen about those same exact statements.

If the trial judge did not commit reversible error, this Court should affirm Appellant's conviction.

### *The Rule of Optional Completeness*

The State again asserts that error was not preserved on this issue and would point out in particular under the Rule of Optional Completeness that during trial, Appellant's counsel not only did not object to the use of the Rule of Optional Completeness, his counsel never even responded to the State's invocation of the Rule of Optional Completeness. *See* R.R. Vol. 4, pp. 67-71 - Stephens. Therefore,

31

every argument in this portion of Appellant's brief is entirely new and not related to or grounded in any objection made at the trial court level.

However, assuming that error was preserved, this argument should still not affect the outcome of this case. Although at trial, the State did make a proffer under the Rule of Optional Completeness, it did not need to rely on the Rule of Optional Completeness in order to offer the medical records.

The medical records were documents showing the injuries that the victim of an assault suffered during the assault. *See* C.R. pp. 52-85. The State had filed those medical records with the District Clerk's Office with a properly sponsoring affidavit. *See* C.R. pp. 52-85.

The indictment alleged that Appellant cause "bodily injury" to Helen Pacheco on December 25, 2013. C.R. p. 13. Bodily injury is defined as physical pain, illness, or any impairment of physical condition. Tex. Pen. Code §1.07 (8) (West 2015).

The medical records for Helen from December 26, 2015 at 1:15 a.m. are certainly relevant and probative of whether Helen received bodily injury on the 25th. *See* C.R. p. 53. Therefore, the State could offer those records independent of the Rule of Optional Completeness. The fact that the Rule was cited to does not suddenly change the nature of the evidence or its admissibility under several theories.

If the trial court's ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then the judgment must be upheld. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004) (en banc).

As the State could have offered the entirety of the medical records without having to invoke the Rule of Optional Completeness, the simple fact that it did invoke the Rule does not transform the situation into error. As no error was committed, Appellant's conviction should be affirmed.


### *Harm*

Even assuming that error was preserved and that the trial judge did in fact err, Appellant was not harmed by the fact that one page of the medical records were not admitted because the physical evidence supported Helen's account of what happened, not Appellant's version. Appellant was also not harmed because evidence of the extraneous offense was elicited elsewhere without objection and Appellant was able to provide evidence that Helen was not in respitory distress through another witness.

Physical evidence confirmed Helen's account of what happened.

Helen said that Appellant only choked her with one hand.  *See* R.R. Vol. 4, p. 35 - Stephens ("…with his *free hand*, he started choking me….He had his *hand* on my neck and squeezing the life out of me." emphasis added).

The physical evidence indicated that Appellant strangled Helen with one hand.  *See* R.R. Vol. 3, pp. 62-63 – Stephens; R.R. Vol. 4, p. 34 - Stephens. Deputy James Purcell testified that Appellant could not easily strangle Helen with one hand if Helen was the aggressor on top of Appellant.  R.R. Vol. 3, pp. 65-66 - Stephens.

The physical marks on Helen led law enforcement to believe that Appellant used only his left hand to strangle Helen.  R.R. Vol. 3, pp. 56, 66 - Stephens. Appellant was in fact left-handed.  R.R. Vol. 4, p. 34 - Stephens.  The EMS worker also confirmed that the red marks on Helen's throat showed where someone had strangled Helen.  R.R. Vol. 4, p. 16 - Stephens.

Additionally, Helen testified that when Appellant let go of her throat after strangling her, she could not stop coughing.  R.R. Vol. 4, pp. 36-37 - Stephens.

Linda Johnson, a paramedic for nearly twenty (20) years, testified that coughing is a physical symptom that may result from someone being strangled. R.R. Vol. 4, pp. 12, 16 - Stephens.  Deputy Purcell also confirmed that coughing could result from someone not being able to breath.  R.R. Vol. 3, p. 31 - Stephens.

34

Johnson also testified that she not only observed the red marks on Helen's throat, but Johnson also documented those red marks in her report. R.R. Vol. 4, p. 18 - Stephens.

Also, the types of injuries that Helen received are consistent with Helen being the victim, not the aggressor. Helen was bitten around her eye. R.R. Vol. 4, p. 37 - Stephens. Deputy James Purcell, an advanced peace officer with nineteen (19) years' experience in law enforcement, testified that it would not be easy for Appellant to bite Helen in that physical location if Helen was the aggressor. R.R. Vol. 3, pp. 18, 65 - Stephens.

Furthermore, the physical evidence did not support Appellant's defense.

Appellant claimed that he accidentally caused Helen's black eye. *See* R.R. Vol. 4, p. 83- Stephens. However, Doug Storey, the former Sheriff of Mills County, testified that in his law enforcement experience it would be extremely difficult for the injury to Helen's eye to happen accidentally. R.R. Vol. 4, pp. 60, 64 - Stephens. Storey testified that such an injury would typically be caused either by one pretty severe blow or several repeated blows. R.R. Vol. 4, p. 64 - Stephens.

Additionally, the jury was able to evaluate Appellant's credibility directly as Appellant himself testified. Appellant claimed that Helen hit him first and that "she was on me like a wildcat." R.R. Vol. 4, p. 83 - Stephens. Appellant claimed

that he "had to do this with [his] elbow, and [Appellant] hit her right in the eye." R.R. Vol. 4, p. 83 - Stephens.

Appellant also testified that "maybe [he] grabbed her from the neck." R.R. Vol. 4, p. 84 - Stephens. Appellant also admitted that he might have bitten Helen. R.R. Vol. 4, pp. 101-02 - Stephens.

Appellant's main claim to support his defense was that he also had a black eye from being assaulted by Helen. Appellant testified that photographs taken by the Sheriff's Office the night of the assault showed him also having a black eye from being assaulted by Helen. R.R. Vol. 4, pp. 85-86, 89 - Stephens. Appellant's cousin also testified that Appellant had a black eye and that she took a picture of the black eye. R.R. Vol. 4, pp. 137-38 - Stephens.

The jury was able to view photographs the photographs from the Sheriff's Office to determine whether they believed Appellant's claim that he also had a black eye. R.R. Vol. 6, Defendant's Exhibits 1 & 2- Stephens. Appellant's cousin testified that in the picture she tried to take, the black eye did not show up. R.R. Vol. 4, pp. 137-38 - Stephens. Sheriff's employees also testified that after the assault, Appellant did not have a black eye. R.R. Vol. 4, pp. 126-27, 135-36 - Stephens. This testimony severely undercut Appellant's credibility.

Appellant claimed that Helen was on top of him like a wildcat for about three minutes *after* he elbowed her in the eye. R.R. Vol. 4, pp. 87-88, 90 -

Stephens. However, the physical evidence did not match this part of Appellant's story either. Only one blood drop was found on the bed, even though Helen was bleeding significantly from her face. R.R. Vol. 3, p. 34 – Stephens; R.R. Vol. 6, State's Exhibit 1 - Stephens. Had Appellant's story been true, Helen would have bled all over the bed, rather than just in one spot.

Appellant also claimed that Helen hit him hard enough that he was bleeding. R.R. Vol. 4, p. 86 - Stephens. Several independent witnesses testified said that the blood on Appellant came from Helen, not Appellant. R.R. Vol. 3, pp. 34-35, 57 – Stephens. R.R. Vol. 4, pp. 67, 127 - Stephens.

Appellant also claimed that he was so intoxicated that he did not remember biting Helen, but that he would have remembered if he had strangled her. R.R. Vol. 4, pp. 101-04 - Stephens.

All of these factors, taken together, show that the jury would have found that Appellant was not credible when he claimed that he did not strangle Helen. If Appellant's own testimony was not credible, one line from medical records would have had little to no effect on the verdict.

Additionally, Appellant was not harmed because portions of the medical records that clearly should have been admissible would not be helpful to Appellant.[9] Statements Helen made about how she received her injuries were

---

[9] *See* previous sections for argument related to the admissibility of the medical records.

entirely consistent with Helen's testimony at trial. The medical records show that Helen reported being hit, strangled and bit by Appellant. C.R. pp. 54, 58.

The medical records also confirm that an examination revealed that Helen had a severe contusion, ecchymosis and hematoma of the left eye and had four crescent shaped lacerations that would be consistent with toothmarks. C.R. p. 58. The records show that sutures had to be used to close these lacerations. C.R. p. 59. As argued above in the Rule of Optional Completeness section, these records were admissible in and of themselves, regardless of whether Appellant tried to offer a portion of the records or not.

Appellant also was not harmed because Appellant's cousin also testified in Appellant's defense. R.R. Vol. 4, pp. 106-23 - Stephens. Appellant's cousin claimed that Helen did not have any bad injuries, that she wouldn't have called the police, and that it appeared like Helen was the aggressor even though Helen was bleeding and Appellant had not been injured at all. R.R. Vol. 4, pp. 113-21 - Stephens.

At absolute best, the only phrase Appellant may have preserved error on is limited to "[Appellant] attacked her by punching her in the face because she had reportedly told someone about [Appellant] hitting her last week." C.R. p. 58. Assuming the trial judge did err in refusing to redact this one statement, this statement alone is not harmful error.

Furthermore, this evidence came in during Appellant's testimony and Appellant's cousin's testimony without objection. *See* R.R. Vol. 4, p. 91, 122 - Stephens. Appellant claims in his brief that the State did not attempt to offer any other evidence of the alleged extraneous offense. *See Brief for Appellant*, p. 22, fn.8. That would be an incorrect statement in light of the cross-examination of both Appellant and his cousin.

Additionally, Appellant claimed at trial and on appeal that the critical evidence he needed from the medical records was evidence that Helen did not show any signs of respiratory distress after the assault. *See* R.R. Vol. 4, p. 68-Stephens; *Brief for Appellant*, p. 22.

However, Appellant elicited testimony from his cousin that after the assault, Helen did not appear to have any type of respiratory problems and did not complain about being unable to breathe. R.R. Vol. 4, p. 122 - Stephens. Appellant also elicited testimony from a Sheriff's deputy that Helen was not provided any medical treatment for strangulation. R.R. Vol. 3, p. 41 - Stephens.

Therefore, Appellant cannot show that he was harmed. Without a showing of harm, this Court should affirm Appellant's conviction for Assault Family Violence – Occlusion.

# CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the State respectfully requests that this Court affirm Appellant's conviction for Assault Family Violence – Occlusion.

Respectfully Submitted,

/S/ ELISHA BIRD
ELISHA BIRD
Assistant District Attorney
State Bar No. 24060339
200 S. Broadway,
Brownwood, Texas 76801
(325)646-0444/Fax:(325)643-4053

# CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing brief was mailed to Connie J. Kelley, Attorney at Law, 1108 Lavaca #110-221, Austin, Texas 78701, on the 31st day of August, 2015.

/S/ ELISHA BIRD
ELISHA BIRD

# CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 9516 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

/S/ ELISHA BIRD
ELISHA BIRD