Agustin Antonio ALFARO, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–05–00151–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 7, 2006.

Richard Edward "Dick" Wheelan, Houston, for Appellant.

Peyton Z. Peebles, III, Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney–Harris County, William J. Delmore III, Assistant District Attorney, Houston, for Appellee.

Panel consists of Chief Justice RADACK, Justice ALCALA, and Justice BLAND.

## OPINION

ELSA ALCALA, Justice.

Appellant, Agustin Antonio Alfaro, appeals the trial court's judgment convicting him of aggravated sexual assault of a child. *See* TEX. PEN.CODE ANN. § 22.021(a)(2)(B) (Vernon Supp.2006). He pleaded not guilty to a jury. The jury found him guilty, and set his punishment at life in prison. In three issues, appellant claims that the trial court erred by denying his motion for a mistrial after a spectator assaulted him, by refusing to allow cross-examination concerning the victim's sexual history, and by allowing improper jury argument by the State's attorney. We conclude that the trial court was within its discretion to deny appellant's motion for mistrial, that appellant failed to preserve error regarding his inquiry into complainant's sexual experience by not making an offer of proof, and that appellant failed to preserve error regarding the State's jury

argument by failing to object at trial. We affirm.

## Background

Appellant met and moved in with complainant's mother when complainant was about five years old. Though the couple did not marry, they lived together for many years, and complainant's mother considered herself to be appellant's wife. Appellant became the primary family disciplinarian, enforcing chores and punishing misbehavior.

When complainant was five, appellant played "horsey," bouncing her on his knee and touching her sexual organs through her clothes. As the years went by, appellant's touches became more intrusive. When she was nine years old, appellant's abuse escalated to penetrating her with his penis. Claiming that he wanted to preserve her hymen so that a future husband would think she was a virgin, appellant would slightly penetrate complainant's sexual organ and then hurry to the bathroom to masturbate. When she was twelve, the assaults began to include oral sex. Appellant assaulted complainant every time he had the opportunity. He warned complainant that her mother would not believe her if she reported the assaults, and that if her mother did believe her, her mother, a diabetic, might die from the shock.

When complainant turned 16, appellant's abuse seemed to stop. She planned to keep the molestation secret forever, worrying about what people would think about her if the story was known. But a few months later, appellant sent signals to complainant that made clear to her "that something that day was going to happen," and that the pattern would begin again. Early the following morning, on a holiday weekend in 2003, complainant ran away from home to her aunt's house. When complainant's mother finally located her daughter, she learned for the first time that appellant had been sexually abusing complainant for more than 10 years. Complainant reported the crime to police officers, who arrested appellant for aggravated sexual assault.

During complainant's testimony before the jury, appellant was physically struck by an audience member, complainant's new husband. The jury was removed from the courtroom and was sent to lunch. During the break, defense counsel moved for a mistrial on the grounds that the disruption would prejudice the jury. The trial court denied the motion, and the trial resumed with no comment from the judge or the attorneys about the altercation.[1] Defense counsel did not move for an instruction that the jury disregard the incident, nor did the judge give one *sua sponte.*

The incident was mentioned once more in open court. Near the end of her testi-

---

1. The record contains the following exchange during the prosecuting attorney's direct examination of complainant:

[State's Attorney:] ... I'm going to ask you why you didn't tell. Right now I want to know about what made you take your clothes off when the defendant was—
    (*Audience member strikes defendant*)
    (*Jury leaves courtroom*)
    (*Lunch recess taken*)
THE COURT: Yes, sir.
[Defense Counsel]: Judge, at this time I'd like to urge a Motion for Mistrial based on the incident that happened prior to breaking for lunch. I believe that the complainant's husband, who was an observer in the courtroom, came from the audience area and came into the area where the attorneys are and assaulted my client from behind and, of course, caused a disruption in front of the Jury. And I feel that that would be very prejudicial in continuing this. And based on that I'm asking that we grant a mistrial, Your Honor.
THE COURT: That will be denied.
    Okay, let's bring the Jury back.

mony, complainant stated that she had recently married, and that her husband had been in the courtroom earlier. At the direction of the trial judge, complainant and the prosecuting attorney clarified that her husband was the person who struck the defendant. Appellant did not object to this information being brought to the jury's attention.

The State, in addition to complainant's testimony, called her mother, her aunt, and mental health professionals as witnesses. Appellant called no witnesses.

### Denial of Motion for Mistrial

█ In his first issue on appeal, appellant contends that the trial court erred in denying his motion for a mistrial after complainant's husband attacked him in open court. Appellant's brief states that the incident "would certainly create an indelible impression upon the minds of the jurors." Appellant suggests he was prejudiced by the assault because the jury convicted him despite the lack of physical evidence to establish the offense, and solely on the word of "a troubled girl who ... was a disciplinary problem." The State responds that appellant has not shown actual or inherent prejudice and that appellant waived his right to complain about the incident by failing to request an instruction to the jury to disregard the assault.

█ Appellant could not have foreseen the assault upon himself by an audience member and could not have objected in advance. See Young v. State, 137 S.W.3d 65, 70 (Tex.Crim.App.2004) (en banc) (noting that in most instances objection will prevent occurrence of prejudicial event, but where event occurs before it could have reasonably been foreseen, lack of objection will not foreclose appellate review); see also Tex.R.App. P. 33.1. After the assault, appellant requested a mistrial, but failed to request an instruction to the jury to disregard the assault. The essential requirement for preservation of error is a timely, specific request, which is refused by the trial court. Young, 137 S.W.3d at 69; Tex.R.App. P. 33.1. Under these circumstances—appellant had no opportunity to object in advance, appellant's motion for mistrial was denied, and appellant failed to request an instruction to disregard—error is preserved only if we determine that an instruction could have its desired effect, which is to ensure that the jury remains impartial. See id. at 70. If the instruction to disregard would not have ensured an impartial jury, then appellant's motion for mistrial is sufficient to preserve error. See id.

█ We review a trial court's ruling denying a mistrial under an abuse-of-discretion standard. See Ladd v. State, 3 S.W.3d 547, 567 (Tex.Crim.App.1999). A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. Id. Thus, a trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error. Id. Determining whether a given error necessitates a mistrial must be made by examining the particular facts of the case. Id.

█ A criminal defendant enjoys the right to be tried by impartial, indifferent jurors whose verdict must be based upon evidence developed at trial. Howard v. State, 941 S.W.2d 102, 117 (Tex.Crim.App. 1996) (en banc). When an appellant claims reversible error based on some external influence on the jury, he "must show either actual or inherent prejudice." Id. A showing of actual prejudice is made when jurors actually articulate a consciousness of

prejudicial effect. *Id.* Appellant presented no evidence from the jury, and thus no showing of actual prejudice has been made here. *See id.* at 117 n. 12. The issue here turns on whether appellant has shown that the external influence—complainant's family member's striking of appellant in the presence of the jury in the courtroom— was inherently prejudicial.

█ The United States Supreme Court has said that "to determine inherent prejudice, we look to whether 'an unacceptable risk is presented of impermissible factors coming into play.' " *Id.* at 117 (quoting *Estelle v. Williams,* 425 U.S. 501, 505, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976)). The Court of Criminal Appeals found that its test, that "spectator conduct or expression which impeded normal trial proceedings would not result in reversible error unless an appellant showed a reasonable probability that the conduct or expression interfered with the jury's verdict," is essentially interchangeable with the federal test. *Howard,* 941 S.W.2d at 117 (quoting *Landry v. State,* 706 S.W.2d 105, 112 (Tex. Crim.App.1985)). A finding of inherent prejudice is reserved for extreme situations. *Id.* This determination is to be made on a case-by-case basis. *Landry,* 706 S.W.2d at 112. In none of the cases which discuss potential effects that external influences may have on a jury do the courts appear to enumerate which factors might be "impermissible," or what degree of risk is "unacceptable." *See, e.g., Howard,* 941 S.W.2d at 117; *Landry,* 706 S.W.2d at 112.

█ In general, a trial court does not abuse its discretion by denying the defendant's motion for mistrial if the trial court has instructed the jury to disregard the assault. *See Williams v. State,* 651 S.W.2d 820, 822 (Tex.App.-Houston [1st Dist.] 1983, pet. ref'd); *see also People v. Sanchez Cortorreal,* 226 A.D.2d 737, 642

N.Y.S.2d 36, 36 (N.Y.App.Div.1996) (finding no "improvident exercise of discretion" when three jurors witnessed altercation between victim's and defendant's families outside courthouse because jurors were questioned in camera and said they could still render impartial verdict).

In *Williams,* after a jury found appellant guilty, his family "began a disturbance in the courtroom" in the presence of the jury. *Williams,* 651 S.W.2d at 821. The disturbance was a " 'melee' ... between [appellant's] family and police officers, and, at some point, the appellant joined in the fracas." *Id.* The trial court instructed the jury "not to let what happened following the court's recess yesterday afternoon affect you[,]" and to "hear the case out and render a decision you feel is a proper decision without consideration of any event or any fear of any sort." *Id.* The trial court denied Williams' motions for mistrial and to poll the jury. We held that Williams presented no evidence in the record "that the incident so prejudiced the jury that it could not fairly assess punishment." *Id.* at 822.

█ Improper bystander conduct against the defendant that is verbal is held to the same test as improper physical contact, and in general a trial court does not abuse its discretion by denying the defendant's motion for mistrial if it instructs the jurors to disregard the improper conduct. *See Brown v. State,* 92 S.W.3d 655, 661 (Tex.App.-Dallas 2002) (holding outburst from victim's father telling jury to "Give my son justice, please[,]" cured by trial court's instruction to jury to disregard remark), *aff'd on other grounds,* 122 S.W.3d 794 (Tex.Crim.App.2003); *Matthews v. State,* 960 S.W.2d 750, 757 (Tex.App.-Tyler 1997, no pet.) (holding outburst by victim's brother during defense counsel's cross-examination of witness called by State not so prejudicial as to preclude cure by instruc-

tion when trial court immediately admonished jury not to consider the statement).

■ The defendant has the burden to show that the jury was prejudiced by the bystander's conduct. *See Williams,* 651 S.W.2d at 821. In *Williams,* we noted that the defendant did not make a bystander's bill[2] describing the event, did not subpoena any jurors to testify at the hearing on his motion for new trial, and did not present any juror's affidavit as to how the incident may have affected the verdict.[3] *Id.* We concluded that "it was incumbent upon the appellant to establish, by competent evidence, the probability of injury to himself as a result of the outburst." *Id.; see also Landry,* 706 S.W.2d at 111–12 (noting that Landry failed to point to any particular verbal outcry or demonstrate how victim's family's emotional responses reasonably could have interfered with jury's verdict); *Ashley v. State,* 362 S.W.2d 847, 850–51 (Tex.Crim.App. 1962) (holding no injury to Ashley shown by statement to widow of murder victim that was not in evidence because trial court gave *sua sponte* instruction to jury to disregard statement and statement did not contradict Ashley's testimony); *Guse v. State,* 97 Tex.Crim. 212, 214–15, 260 S.W. 852, 854 (1923) (holding no injury to Guse shown by statement from audience member that contradicted Guse's testimony because statement was irrelevant to defense presented).

■ "We will not lightly assume the jury disregarded its instructions and rendered a verdict based upon" bystander's conduct. *Howard,* 941 S.W.2d at 117. In *Howard,* the Court of Criminal Appeals found no inherent prejudice in the presence of a number of uniformed law enforcement officers at the back of the courtroom during a capital murder trial where the defendant murdered a Department of Public Safety trooper during a routine traffic stop. *See id.* The 20 officers comprised roughly one-fifth of the total gallery, and sat in the back of the courtroom. *Id.* at 118. The court held that "[t]he presence of a victim's family—in an effort to show solidarity or support with the victim—is alone not enough to establish a reasonable likelihood of prejudice." *Id.* at 118.

We have not found any Texas case that has reversed a conviction for improper conduct by a bystander.[4] We note, however, that the Court of Criminal Appeals has indicated that depending on the facts of

**2.** The Rules of Appellate Procedure provide a procedure traditionally referred to as a "Bystander's Bill of Exception," which enables a party to develop a record and place an issue before an appellate court when the party's version of events differs from that of the trial court. *Thieleman v. State,* 187 S.W.3d 455, 457 n. 2 (Tex.Crim.App.2005); *see also* Tex. R.App. P. 33.2(c)(3).

**3.** Such testimony would have been admissible under our Rules of Evidence: "[A] juror may testify ... whether any outside influence was improperly brought to bear upon any juror." Tex.R. Evid. 606(b).

**4.** We have found only one Texas case reversing a conviction for an improper outburst, but that reversal was premised on prosecutorial

misconduct, which is not at issue here. *See Stahl v. State,* 749 S.W.2d 826, 826–27 (Tex. Crim.App.1988).

> In *Stahl,* the State's attorney called a witness to the stand knowing that she was prone to emotional outbursts, and asked her to identify a photograph of her dead son. *Id.* at 828. She burst into tears and yelled at the defendant. *Id.* at 827. The judge instructed the jury to disregard, but the prosecutor nonetheless referred to the incident in closing argument. *Id.* The misconduct included repeated and improper allusions to the outburst during argument, and the court of appeals suggested that the district attorney "actually orchestrated the original outburst." *Id.* at 826–27.

the incident, a defendant may be able to show prejudice due to improper conduct by a bystander. *See id.* (stating that "[i]f the record at bar indicated some overt conduct or expression, or perhaps a higher ratio of police officers, or even perhaps some indication that the law-enforcement contingency gravitated toward the jury, then there might be some basis for appellant's argument.")

The record here contains no evidence that the jury's verdict was influenced by the assault. *See Williams,* 651 S.W.2d at 821–22; *Howard,* 941 S.W.2d at 117. Appellant did not file a motion for new trial, did not file a bystander's bill of exception, and did not obtain affidavits from jurors regarding the assault. *See Howard,* 941 S.W.2d at 117. Moreover, the record shows that the prosecution did not improperly capitalize on the external influence. *Compare Stahl v. State,* 749 S.W.2d 826, 826–27 (Tex.Crim.App.1988). Appellant has thus failed to produce "competent evidence" that he was injured by the bystander's conduct. *See Williams,* 651 S.W.2d at 822. We conclude, therefore, that appellant has failed to show that a request for an instruction to disregard the assault would not have been heeded by the jury. *See Ladd,* 3 S.W.3d at 567. We hold that appellant has waived any error by failing to request from the trial court an instruction for the jury to disregard the assault. *See Young,* 137 S.W.3d at 69; *see also* Tex.R.App. P. 33.1. We overrule appellant's first point of error.

### Evidence of Past Sexual Conduct

■ In appellant's second point of error, he states that evidence of complainant's past sexual behavior was improperly barred by the trial court. He argues that a possible encounter between complainant and male friends her own age should have been admitted to explain the State's evidence that complainant suffered yeast infections, which may be indicative of sexual activity. When defense counsel attempted to cross-examine complainant concerning her relationship with two young male friends, the trial court sustained the State's objection to the relevance of the question.

■ To preserve an issue for appeal premised on the trial court's exclusion of evidence, a party must make an offer of proof, unless the substance of the evidence "was apparent from the context within which questions were asked." Tex.R. Evid. 103(a)(2); *see also Reyna v. State,* 168 S.W.3d 173, 176–77 (Tex.Crim.App. 2005). Under the principle of "party responsibility" endorsed by the Court of Criminal Appeals, the party complaining on appeal about a trial court's admission, exclusion, or suppression of evidence "must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule in question and its precise and proper application to the evidence in question." *Reyna,* 168 S.W.3d at 177.

Appellant did not make an offer of proof. However, he contends on appeal that his questioning of complainant and complainant's mother was "an obvious attempt to rebut the testimony regarding the yeast infections" and that it should have been apparent to the trial court that he was attempting to introduce the medical evidence under Rule 412 of the Rules of Evidence.[5] We disagree.

The record shows that appellant told the trial court that his questions to complain-

---

**5.** Rule of Evidence 412 expressly permits evidence of specific instances of an alleged victim's past sexual behavior if such evidence is necessary to rebut or explain scientific or medical evidence offered by the State. Tex.R. Evid. 412(b)(2)(A).

ant about her relationship with boys was relevant to motive, and appellant's function as disciplinarian. Appellant did not suggest to the trial court that his questions to complainant about her relationship with boys was relevant to explain why complainant had a yeast infection, as he now claims on appeal. *See Reyna*, 168 S.W.3d at 179 (noting that error not preserved because defendant "did not put the trial judge on notice"). Here, as in *Reyna*, we conclude that "the trial judge never had the opportunity to rule upon this rationale" that appellant now presents on appeal. *See id.* We hold that appellant has waived error under Rule 103 because he did not make an offer of proof and the substance of the evidence was not apparent from the context within which questions were asked. *See* TEX.R. EVID. 103(a)(2); *Reyna*, 168 S.W.3d at 176–77. We overrule appellant's second point of error.

### Jury Argument

 In appellant's third point of error, he contends that parts of the prosecution's jury argument were improper. Appellant contends that the State's closing arguments (1) omit the proper standard by not telling the jury that it must believe the child beyond a reasonable doubt, and (2) ask the jury to reach a verdict not based on the evidence, but to avoid hurting a young woman's feelings. Appellant did not object to the argument. In his brief, he urges that objection is not necessary because the argument was so prejudicial that no instruction could cure the harm. When an appellant fails to object to jury argument, he forfeits his right to raise the issue on appeal. *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex.Crim.App.2004). Because appellant failed to object at trial to the State's argument, any error in argument is waived. We overrule appellant's third point of error.

### Conclusion

We affirm the judgment of the trial court.