Opinion issued April 10, 2008












Opinion issued April 10, 2008

 

 

 

 

 

 








 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 

 



NOS.          01-05-00928-CR
& 01-05-00929-CR

 

 



KENDRICK EARL EDWARDS, Appellant

 

V.

 

STATE OF TEXAS,
Appellee




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



On Appeal from the 400th District Court

Fort Bend County, Texas

Trial Court Cause Nos. 39701 & 39702

 

 



MEMORANDUM OPINION








After finding appellant Kendrick Earl
Edwards guilty as charged of robbery and kidnapping, the jury assessed
sentences of twenty years’ imprisonment for the robbery charge and ten years’
imprisonment for the kidnapping charge.  See Tex.
Penal Code Ann. §§ 20.03, 29.02 (Vernon 2003).  In this appeal, Edwards contends that the
trial court erred in: (1) allowing testimony regarding a hearsay statement by
Edwards’s accomplice; and (2) admitting a hearsay statement written on a photo
array.  Finding no error in connection
with Edwards’s first issue and waiver of his second, we affirm.

Background

Kasi Coleman met Edwards in December
2003 through a free social networking website she had joined with the hope of
making new friends.  Coleman chatted with
Edwards online for about a month before deciding to meet him in person.  This meeting took place in January 2004.  Edwards met Coleman at her house and drove
down to Galveston
while they conversed about topics such as family and work. 

          Coleman
and Edwards continued to become acquainted and grew friendlier with each other
through telephone conversations.  Once,
when Edwards called Coleman while she was out having dinner with a friend,
Coleman gave Edwards an impromptu invitation to meet them at the
restaurant.  Edwards drove to the
restaurant and visited for a little while with Coleman and her friend.  

By that time, Coleman felt that
Edwards had become a trustworthy friend, and decided to invite him to her home
for a visit.  She and Edwards watched a
movie and made small talk.  When Edwards
tried to hug Coleman, she asked him not to touch her.  Edwards later poked her in a playful
way.  She asked him again not to touch
her, and he stopped.  The rest of the
evening was uneventful, and Coleman felt that Edwards had respected her
request.

Edwards called Coleman several times
during the following week.  Edwards made
these calls from a telephone with a blocked number.  When Coleman asked him why, Edwards explained
that he was using his uncle’s business phone, which could not receive incoming
calls.  Edwards told Coleman that he had
a Valentine’s gift for her, and they made arrangements to meet again.  

          Edwards
and Coleman made arrangements to meet for lunch at Edwards’s home a few days
later.  Edwards then gave Coleman his
address.  

When Coleman tried to download a map
and directions to the home, she discovered that the address Edwards had given
her was invalid. Late in the morning on the day they planned to have lunch,
Edwards called Coleman at home.  Coleman
told Edwards that the address he gave her was not correct, and, while she had
some familiarity with the area, she told him she would not come unless he gave
her his telephone number so that she could contact him if she were to become
lost.  Edwards called Coleman back with a
number, and she set out to find the home.

As Coleman approached the area, she
called Edwards for directions to the home. 
Coleman testified that the directions were “twisted” and that she felt
Edwards “was trying to confuse her.” 
Coleman nevertheless located the home, where she was greeted by
Edwards.  By the time Coleman arrived,
her senses were alerted by the difference between the actual address of the
home and the one Edwards first gave her, and the presence of a car she did not
recognize in front of the home, while the car she knew Edwards to drive was
nowhere in sight.  Once inside, Coleman
also noticed pictures of Caucasian people on display and children’s shoes lined
up near the door, even though Edwards was African-American and had never
mentioned having any children.  After
about half an hour, these and other inconsistencies made Coleman so
uncomfortable that she decided to leave. 
As she rose to leave, Edwards asked her for help moving a water case in
the garage.  When Coleman entered the
garage, Edwards grabbed the back of her neck and sprayed her face with a
mace-like irritant.  

          The
spray temporarily made Coleman unable to see or breathe freely.  When she began to question Edwards’s actions,
he ordered her to “shut the f‑‑‑ up and get the f---
down.”  Coleman suddenly heard a female
voice parroting Edwards’s order and accusing Coleman of “messing with her
man.”  

Edwards then demanded $600 from
Coleman.  When Coleman said that she did
not have the money, Edwards and his accomplice, later identified as Jamie
Rogers, discovered a debit card in Coleman’s purse and decided to take Coleman
to an ATM.  Rogers backed Coleman’s car into the garage.
Edwards pulled the hood of Coleman’s sweatshirt over her eyes and made Coleman
sit with him in the back seat, warning her to keep her eyes closed or he would
shoot her.  

Rogers stopped the car at one ATM, but
Edwards did not get out because too many people were present.  They drove to another ATM location, and
Edwards tried but was unable to make a withdrawal.  Edwards returned to the car with the denial
of funds slip and accused Coleman of lying to him.  They drove around for some time, until Rogers said that she
needed to be somewhere.  After they
stopped to drop her off, Edwards continued to drive around with Coleman in the
backseat.  Some time later, Edwards
stopped on the side of the road.  He had
Coleman lie down on the backseat and collected the contents of Coleman’s
purse.  Then, Edwards placed the car keys
outside the driver’s side door.  Before
departing, he said, “give me five to seven minutes, then you can leave,” and
threatened that he would come after her and her family if she went to the
police. 

The following morning, Coleman filed
a police report.  Over the next few days,
Coleman noticed several fraudulent attempts to withdraw money from her checking
account, and later discovered that one of the checks stolen from her purse had
been used to buy automotive accessories. 

          After
filing the police report, Coleman continued to cooperate with the investigation
into the crime.  When Officer Hargrave,
who was assigned to investigate the crime, asked Coleman to review a photo
lineup, Coleman immediately identified the individual in the first photo as
Edwards.  After Hargrave instructed
Coleman to write down what she knew about Edwards, she wrote in the photo’s
margin, “[t]his person know [sic] to be Kendrick violated me.” 

The police investigation ultimately
resulted in Edwards’s apprehension. 
Following trial, conviction, and sentencing, Edwards appeals.     

Discussion

          Edwards’s
complaints both relate to the trial court’s decisions to admit evidence.  First, he contends that the trial court erred
in allowing Coleman to recount Rogers’s
statement to the jury.  Second, he
asserts that the trial court erred in admitting into evidence the photo array
that contained Coleman’s handwritten note concerning Edwards. 

A.      Standard of review

We review the trial court’s decisions
on the admissibility of evidence for an abuse of discretion.  See McGee
v. State, 233 S.W.3d 315, 318 (Tex.
Crim. App. 2007).  An abuse of discretion
occurs when a trial court’s decision lies outside the zone of reasonable
disagreement.  Id.  In determining whether an abuse of discretion
occurred, we consider whether the court acted arbitrarily, unreasonably or
without reference to guiding rules or principles.  Montgomery v. State, 810
S.W.2d 372, 380 (Tex. Crim. App. 1990) (quoting Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985)).      

B.      Admission
of testimony recounting Rogers’s
statements 

In his first issue, Edwards complains
that the trial court abused its discretion by allowing Coleman to testify that,
after Edwards sprayed her in the face, she heard a female voice yelling “tell
that bitch to shut the f--- up, messing with my man.”  Edwards contends that this testimony
constitutes inadmissible hearsay.  We
disagree.  

The State elicited this testimony by
asking Coleman, “How loud did the female—what was her voice like when she told
you what she said?”  In response to the
defense’s hearsay objection, the State responded that the statement was offered
to show Coleman’s state of mind, not to prove the truth of the matter
asserted.  The trial court overruled the
objection and allowed Coleman to answer.

Hearsay is a statement, other than
one made by the declarant while testifying at trial, offered in evidence to
prove the truth of the matter asserted.  Tex. R. Evid. 801(d); see Jones
v. State, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992), overruled on other grounds by Maxwell v. State, 48 S.W.3d 196 (Tex.
Crim. App. 2001); Martinez v. State,
186 S.W.3d 59, 66 (Tex. App.—Houston
[1st Dist.] 2005, pet. ref’d).  Hearsay evidence is not admissible except as provided by
statute or the rules of evidence. See Tex. R. Evid. 802. 
Conversely, out-of-court statements that are offered for a purpose other
than to prove the truth of the matter asserted are not hearsay and may be
admissible.  Dinkins v. State, 894 S.W.2d 330, 347 (Tex.
Crim. App. 1995); Smith v. State, 236
S.W.3d 282, 297 (Tex. App.—Houston
[1st Dist.] 2007, pet. ref’d).  

For the robbery case, the State was
required to prove beyond a reasonable doubt that Edwards intentionally or
knowingly threatened or placed the victim in fear of imminent bodily injury or
death.  Tex.
Penal Code § 29.02(a)(2). 
Here, the record reflects that the State was asking about Rogers’s statements to elicit testimony concerning their
effect on Coleman, not to show that Rogers
actually wanted Coleman to be quiet or stop “messing with [her] man.”  Because the statement, as used, does not
constitute hearsay, the trial court did not abuse its discretion in admitting
that testimony.  

C.      Admission of Statement
Written on Photo Array

In his second issue, Edwards
complains that the trial court abused its discretion by admitting into evidence
the photo array containing Coleman’s handwritten statement, which, Edwards
contends, constitutes inadmissible hearsay. 
Edwards, however, waived any error resulting from the admission of that
evidence.  

To preserve error for appellate
review, a party must make a timely and specific objection and obtain a ruling
on that objection.  Haley v. State,
173 S.W.3d 510, 516 (Tex. Crim. App. 2005); Geuder
v. State, 115 S.W.3d 11, 13 (Tex.
Crim. App. 2003); see Tex. R. App. P. 33.1(a).  To satisfy the timeliness requirement, a
party “complaining on appeal about a trial court’s admission, exclusion, or
suppression of evidence ‘must, at the earliest opportunity, have done
everything necessary to bring to the judge’s attention the evidence rule in
question and its precise and proper application to the evidence in
question.’”  Alfaro v. State, 224 S.W.3d 426, 433 (Tex.
App.—Houston
[1st Dist.] 2006, no pet.) (quoting Reyna
v. State, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005)).  

During its direct examination of
Coleman, the State had her identify and testify about the photo array and read
her handwritten statement to the jury. 
Later, in examining Hargrave, the State delved further into the
circumstances surrounding his preparation of the array, Coleman’s
identification of Edwards, and how Coleman came to make a handwritten notation
on the array.  After authenticating the
photo array through Hargrave, the State proffered it as an exhibit.  Not until then did defense counsel object to
admission of the handwritten statement. 
That objection came too late because both Coleman and Hargrave had
already testified to the array and the statement’s contents.  See
Goldberg v. State, 95 S.W.3d 345, 368 (Tex. App.—Houston [1st Dist.] 2002, pet ref’d).  

Moreover, defense counsel objected to
the handwritten statement on the grounds that it was irrelevant and unfairly
prejudicial, not because it was hearsay. 
An objection must comport with the issue raised on appeal.  Fuller
v. State, 827 S.W.2d 919, 928 (Tex. Crim. App. 1992); Smith, 236 S.W.3d at 291.  If
an objection made in the trial court differs from the complaint raised on
appeal, the defendant has not preserved any error for review.  Butler v. State, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994); Smith, 236 S.W.3d at 291. 
Thus, Edwards failed to preserve this issue for appeal.

Conclusion

 

Edwards failed to show that the trial
court abused its discretion in his first evidentiary challenge, and he waived
his second challenge.  Accordingly, we
affirm the judgment of the trial court.

 

Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Jennings and Bland.

Do not publish.  See Tex. R. App. P. 47.2(b).