**Opinion issued October 20, 2016.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-00646-CR
_____

**ALAN DOMINGO DIAZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 21st District Court**
**Washington County, Texas**
**Trial Court Case No. 16,527**

---

## MEMORANDUM OPINION

A jury convicted appellant Alan Domingo Diaz of aggravated assault causing serious bodily injury. *See* TEX. PENAL CODE § 22.02. The trial court found an enhancement allegation true and sentenced Diaz to 99 years in prison. On appeal, Diaz argues that the trial court erred by denying his request for a self-

defense instruction in the jury charge, excluding testimony that he was threatened by the complainant, and excluding evidence regarding a lawsuit filed by the complainant.

We affirm the judgment of the trial court.

## Background

Appellant Alan Domingo Diaz was charged with aggravated assault in retaliation against a witness against him. *See* TEX. PENAL CODE § 22.02(b)(2)(c). Diaz had been arrested for burglary in Washington County, Texas, along with the complainant, Brandon Andrews. After their arrest, Diaz told Andrews, "don't snitch." But Andrews made a statement to the police about Diaz's involvement in the burglary. As a result, Diaz and Andrews were housed in jail separately.

Andrews walked into a cell block to get a haircut, and he found Diaz there, also getting a haircut. After Diaz was finished, he rolled up his pant legs, asked which way the cameras were pointed, and asked Andrews: "are you ready?" Diaz then punched him repeatedly, while Andrews tried to cover himself to prevent injury. After a punch to the face, Andrews began bleeding out of his left eye. After the incident, Andrews was unable to see out of that eye. He requested medical care, but he did not receive treatment until the next day. As a result, Andrews has been told he is unlikely to ever see out of that eye again, and he filed a lawsuit against Washington County based on its alleged failure to treat him in a timely manner.

Several inmates who witnessed the fight testified at Diaz's trial on the aggravated assault charge, giving different accounts. Some testified that Andrews spit on Diaz before the fight, but others claimed this never occurred. Some inmates claimed that Diaz and Andrews fought each other, while others claimed that Andrews did not fight back. The trial court excluded testimony about a threatening statement about Diaz that Andrews allegedly communicated to another inmate shortly before the fight.

The defense questioned Andrews about his pending lawsuit against Washington County. Diaz offered the petition into evidence. The State objected to these questions and to admitting the petition into evidence. The trial court allowed some questions about the lawsuit, but it eventually sustained objections to repeated questions on that subject. The trial court also sustained the State's objections to the petition.

The jury found Diaz not guilty of aggravated assault in retaliation, but guilty of the lesser-included offense of aggravated assault causing serious bodily injury. The State alleged as an enhancement Diaz's previous felony conviction for burglary of a habitation with the intent to commit theft. The trial court found the allegations of the enhancement to be true and sentenced Diaz to 99 years in prison. Diaz appealed.

**Analysis**

Diaz raises three issues on appeal. First, he claims that the trial court erred by refusing to include an instruction on self-defense in the jury charge. Second, he asserts that the trial court erred by excluding testimony that Andrews threatened him. Third, he claims that the trial court erred by excluding evidence and limiting cross-examination regarding the civil lawsuit filed by Andrews against Washington County.

## I. Self-defense instruction

In his first issue, Diaz argues that the trial court erred by refusing to include a self-defense instruction in the jury charge because he introduced evidence that he was acting in self-defense when he fought Andrews.

Jury charge error is reviewed by a two-step process. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). First, the court determines whether error exists in the charge. *Id*. If error does exist, the record is reviewed to determine whether the error caused sufficient harm to require reversal of the conviction. *Id*. When the defendant properly objects to the error in the charge, reversal is required unless the error was harmless. *Id*.; *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *Starks v. State*, 127 S.W.3d 127, 133 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd, untimely filed).

4

When a defensive theory is raised by the evidence, the theory must be submitted to the jury, regardless of whether the supporting evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court believes the supporting evidence is not credible. *See Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007); *see also Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007); *Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997). A trial court's decision not to include an instruction on a defensive issue in the charge is reviewed for an abuse of discretion, with the evidence viewed in the light most favorable to the defendant's requested submission. *See Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006); *Love v. State*, 199 S.W.3d 447, 455 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

A person "is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." TEX. PENAL CODE § 9.31(a). A higher standard applies to the use of "deadly force," which is defined as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id*. § 9.01(3). "'Serious bodily injury' means bodily injury that . . . causes . . . serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(46). A person is only justified in using deadly force

when he is justified in using force under section 9.31 and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against another's use or attempted use of unlawful deadly force, or to prevent another's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. *Id*. § 9.32(a).

Diaz used "deadly force" because he used force that caused the loss of the function of a bodily organ, Andrews's left eye. *Id*. §§ 1.07(46), 9.01(3). Therefore, Diaz could claim self-defense only upon a showing that Andrews used or attempted to use unlawful deadly force, or that he was about to commit one of the offenses that justify deadly force to prevent their commission. *Id*. § 9.32; *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001). Diaz relies upon the testimony of several inmates to support his claim of self-defense. These witnesses testified that upon entering the haircut room, Andrews spit on Diaz, thereby instigating the fight. The claim that Andrews spit on Diaz is the only evidence of force initiated by Andrews. Spitting does not constitute deadly force because it is not ordinarily capable of causing death or serious bodily injury. *See* TEX. PENAL CODE § 9.32(a)(2)(A).  Nor does it qualify as an offense that justifies a preemptive use of deadly force. *See id*. § 9.32(a)(2)(B). Diaz therefore was not justified in using deadly force, and he was not entitled to a jury charge instruction on the issue of self-defense.

We overrule Diaz's first issue.

## II. Exclusion of evidence

Diaz's remaining issues concern the exclusion of evidence. "A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . ." TEX. R. EVID. 103(a). A trial court's decision to admit or exclude evidence is reviewed under an abuse-of-discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006); *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004); *Smith v. State*, 340 S.W.3d 41, 53–54 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)); *Smith*, 340 S.W.3d at 53–54. A trial court's evidentiary ruling will not be reversed unless that ruling falls outside the zone of reasonable disagreement. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). To preserve error and challenge the exclusion of evidence on appeal, the complaining party must present the excluded evidence to the trial court by offer of proof. *See Alfaro v. State*, 224 S.W.3d 426, 433 (Tex. App.—Houston [1st Dist.] 2006, no pet.); TEX. R. EVID. 103(a)(2).

## A. Evidence of threatening statement

In his second issue, Diaz argues that the trial court erred by excluding testimony about a threat that Andrews allegedly communicated to another inmate. The trial judge sustained a hearsay objection to this alleged statement. On appeal, Diaz argues that the statement was admissible under the excited utterance exception to the hearsay rule. But because Diaz made no offer of proof to the trial court regarding the substance of the testimony, this issue has not been preserved for appeal. TEX. R. EVID. 103(a)(2).

We overrule Diaz's second issue.

## B. Exclusion of evidence regarding civil lawsuit

In his third issue, Diaz argues that the trial court erred by limiting cross-examination of Andrews about his lawsuit against Washington County and by refusing to admit a redacted version of the petition filed in that suit.

Diaz contends that this cross-examination would have revealed Andrews's motive or bias in testifying that he was the initial aggressor and that the fight was one-sided. In addition, Diaz asserts that this cross-examination would have called into question whether he or Washington County caused Andrews's serious bodily injury.

A trial court has discretion to limit the scope of cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the

8

injection of cumulative or collateral evidence. *Cruz-Escalante v. State*, 491 S.W.3d 857, 861 (Tex. App.—Houston [1st Dist.] 2016, no pet.). A trial court's decision to limit cross-examination is reviewed under an abuse-of-discretion standard. *Mims v. State*, 434 S.W.3d 265, 271 (Tex. App.—Houston [1st Dist.] 2014, no pet.). When evidence alleged to have been erroneously excluded is admitted later through another source, any error in excluding it is harmless. *See Railsback v. State*, 95 S.W.3d 473, 480 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

Diaz identifies two aspects of Andrews's civil suit that were relevant to his defense of the assault charge. He contended that the lawsuit was relevant to Andrews's "motive and bias in testifying" that he was "the initial aggressor and that the fight was one-sided." And in response to the charge that he caused serious bodily injury to Andrews, Diaz took the position that "his action did not result in serious bodily injury but rather the serious eye injury . . . was the result of the failure of the jail personnel to provide medical care."

Both of these themes were explored through the cross-examination of Andrews about his civil suit. The trial court allowed Andrews to be asked about the lawsuit he filed against Washington County and how his claim would be impacted if in fact he and Diaz simply "had a jailhouse fight." In response, Andrews stated: "Washington County failed to treat me after the injury which explains the lawsuit and I'm going to leave it at that. But Washington County did not assault me. That

man did." The trial court also allowed Diaz's counsel to ask Andrews whether he believed Washington County's failure to treat him after the fight "resulted in the deterioration" of his vision to the degree that he became blind. Andrews replied, "Washington County didn't punch me in the eye. Alan Diaz did."

Diaz's counsel subsequently asked Andrews: "Do you recall whether in your lawsuit you alleged that Washington County's failure to treat your eye injury resulted in the deterioration of your vision to the point you were blind." At this point, the trial court sustained the State's objection. Diaz challenges this ruling on appeal, but his argument does not acknowledge that he already had asked several substantially similar questions about the civil lawsuit. Nor does he explain how the error in sustaining an objection, if any, affected his substantial rights in light of the other questions that were asked and answered. *See* TEX. R. EVID. 103(a); TEX. R. APP. P. 44.2(b); *see Railsback*, 95 S.W.3d at 480.

Diaz raises similar arguments that the trial court should have admitted a redacted version of Andrews's petition into evidence. He asserts that the petition demonstrated motive or bias and called into question the cause of Andrews's serious bodily injury. The redacted petition included the factual allegation that Washington County, the Sheriff, and the Sheriff's Department refused Andrews's request for medical attention, and "his condition deteriorated to a degree he lost the

10

use of his left eye." The trial court sustained the State's objections to admitting the petition into evidence.

Although the trial court excluded the petition, Diaz elicited testimony from Andrews which provided the same information as that contained in the petition. Because the evidence alleged to have been erroneously excluded was admitted through another source, any error in excluding it was harmless. *See Railsback*, 95 S.W.3d at 480; *see also* TEX. R. EVID. 103(a); TEX. R. APP. P. 44.2(b).

We overrule Diaz's third issue.

## Conclusion

We affirm the judgment of the trial court.



Michael Massengale
Justice

Panel consists of Justices Bland, Massengale, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

11