

# NUMBER 13-22-00417-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**RUBEN TIJERINA GOMEZ,**

                                                                            **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                         **Appellee.**

---

### ON APPEAL FROM THE 36TH DISTRICT COURT
### OF SAN PATRICIO COUNTY, TEXAS

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña**
**Memorandum Opinion by Justice Peña**

Appellant Ruben Tijerina Gomez appeals his conviction for two counts of capital murder, a capital felony. *See* TEX. PENAL CODE ANN. § 19.03(a)(2). After the jury found Gomez guilty on both counts, and because the State did not seek the death penalty, the trial court sentenced Gomez to life without the possibility of parole. *See id*. § 12.31(a)(2).

In one issue, Gomez argues that the trial court committed reversible error by denying a motion for mistrial urged by Gomez after an altercation in the courtroom. Gomez argues that a mistrial was warranted based on: (1) Gomez's conduct, (2) the conduct of witnesses or bystanders, and (3) the conduct of the trial court in responding to the altercation. We affirm.

## I. BACKGROUND

In a two-count indictment, Gomez was charged with the murder of Manuel Pardo: one count of capital murder committed while robbing or attempting to rob Pardo, and one count of capital murder committed while kidnapping or attempting to kidnap Pardo. *See id*. § 19.03(a)(2) (making it a capital offense for an individual to commit murder "in the course of committing or attempting to commit" robbery or kidnapping, among other felonies). Gomez pleaded not guilty, and the case proceeded to trial.

Evidence was adduced at trial showing that in the early morning of January 11, 2020, Pardo parked his truck at a local school in Sinton, Texas, before going on his usual morning walk. Pardo's wife became concerned that he had not returned home all day, so she reported him missing to the Sinton Police Department (SPD). After finding Pardo's truck abandoned, law enforcement confirmed through video evidence where Pardo had parked his truck that morning, and "developed information that [Gomez] may have been seen walking on the railroad tracks" towards Sinton, which were located within "about a mile and a half" of where Pardo parked his truck. Based on this information, Sergeant Aaron Putnam with the SPD began searching a portion of an unused, barricaded road near where Gomez had been seen, which people were known to use because it was still physically accessible. Sergeant Putnam followed the road to where it met an old bridge

2

and found Pardo's body stuffed inside a large drainage pipe located in a deep ditch on the side of the bridge. After conducting an investigation, law enforcement connected Pardo's truck to Jose Espinoza, who implicated Gomez and Alex Mireles.

The State presented both Espinoza and Mireles as witnesses. Espinoza testified that around 6:00 a.m. on January 11, Gomez and Mireles arrived in Pardo's truck at the house where Espinoza was staying. Espinoza positively identified the truck by reference to previously admitted photo exhibits. Espinoza testified that once outside, he spoke to Mireles, who was emotional and crying. Mireles hugged Espinoza. Once Espinoza went back inside the house, he observed Mireles and Gomez taking things from the truck and saw that they had started a fire outside. After about an hour and a half, all three of them left in Pardo's truck. They proceeded to the area where Pardo's body was buried. Espinoza testified that he saw Pardo's body in a ditch, "stuffed" "inside of a sewer thing." Espinoza then went to drop off Mireles and Gomez. Espinoza testified that Gomez instructed him to "take [the truck] to Corpus [Christi] and dump it off the bridge." Instead, Espinoza left the truck off of Highway 77 across from a gas station.

After the trial court excused Espinoza, the State called Mireles as its next witness. The reporter's record then reflects that: "(At this time a brawl occurred in the courtroom between the Defendant, [Mireles], [Espinoza], and members of the audience. Jury still present at this time.)." After the judge excused the jury and ordered Gomez removed from the courtroom, the record reflects that an unidentified "audience member" stated, "Judge, I'm sorry I didn't think he would do that," to which defense counsel responded: "No comment. Be respectful to the Court." The trial court closed the courtroom, and the following exchange then occurred:

3

| [The State]: | What do you want to do, Judge? |
| [The Court]: | Mistrial. |
| [The State]: | Judge, we're going to let the defendant cause his own mistrial? |
| [The Court]: | Yea, we are. |
| [The State]: | I strenuously object to that. He is the cause. He is the one that jumped over the rail. |
| [The Court]: | We will discuss this later. I will – in[ deference] to your request I will not declare a mistrial at this time, but I am excusing the jury for the rest of the day. |

The trial court then recalled the case and informed the jurors that they would be in recess until the following day, commenting that: "And just as sure as I sa[id] this isn't anything like TV something like this happens and it's just like TV, it would [be] a great episode." The trial court also ordered the jury members be personally escorted to their vehicles, noting that their "safety is a paramount of importance to us and I want for y'all to feel safe and know that you are safe in your courthouse."

Before trial could resume the following day, Gomez filed a motion for mistrial, arguing that "[s]ome other disruption occurred during this trial that makes a fair trial for [Gomez] impossible," "[e]vidence has been improperly introduced by a member in the audience," and "something has happened outside the rules of the trial that could prevent [Gomez] from receiving a fair trial." Prior to resuming the trial, the trial court heard arguments on Gomez's motion for mistrial outside the presence of the jury. In support of Gomez's motion, defense counsel raised the same arguments as in the written motion, and further explained that:

[E]vidence has been improperly introduced by a member in the audience

4

and I don't know if it was the grandmother who jumped in and then stated, because the jurors w[ere] in here, ["]you did it that's why you started the fight,["] something to that effect,[1] and I know the jury heard it. . . .

And so I'm urging this motion for mistrial not just based on actions of Mr. Gomez, but the additional actions that occurred. Audience members, the comments that were made. And then I think also one of the witnesses, [Espinoza], came back in the courtroom and then that started another altercation.

And so I do believe that [Gomez] would not be able to get a fair trial because it has definitely left an impression on the minds of the jury.

After hearing argument from the State in opposition to Gomez's motion for mistrial,

the trial court denied the motion, stating as follows:

[F]or the purposes of the record I want it noted that yesterday['']s altercation when [Mireles] was brought into the courtroom was instigated by your client [Gomez].

But for [Gomez] jumping the bar and attacking [Mireles] there just wouldn't have been a problem at all.

With the grandmother and there was one other woman, whose relationship to the parties I do not know, getting into that fight and [Espinoza] coming back in and getting into that fight.

As far as any words that were said or spoken I didn't hear any and [I was] closer to the altercation than the jury [was].

It was a horrible scene and I don't know if the officers['] cameras were activated, but if they were I certainly know that they will be a[ ]part of the report that will be filed.

But once again, absolutely none of this would have occurred if [Gomez] had contained and controlled his anger and had remained seated. He cannot benefit from his actions.

I happen to know that and you stated on the record that he refused the plea agreement and so because of that we are going forward. And the motion for mistrial is denied.

---

[1] No such statement is reflected in the reporter's record.

5

The trial court ordered Gomez to be shackled by his feet and have his notepad and pen removed for the remainder of the trial.

The trial resumed and the State called Mireles to the stand. Mireles testified that on the morning of the murder, he met Gomez around 4:00 or 5:00 a.m. Mireles and Gomez then "took off walking" and during their walk, they encountered Pardo. "[Pardo] said good morning," then Gomez "said [']what the fuck you say['] and he started beating [Pardo] up." At first, Gomez was beating Pardo up with his hands, but then took a flashlight that Pardo had with him, hit Pardo with it, and "ended up using that to finish [Pardo] off." Mireles and Gomez then took Pardo's keys from his pocket, walked to Pardo's truck, and drove the truck back to Pardo's body. Mireles testified that he and Gomez loaded Pardo's body onto the truck and drove to a dirt road, and Gomez then dragged his body off the truck and "thr[ew] it down [a] ditch." Mireles then drove the truck to Espinoza's place, and Mireles and Gomez "started burning the items out of the truck" to "[g]et rid of it." Mireles stated that he, Gomez, and Espinoza then returned to the body, after which Espinoza dropped him and Gomez off. Mireles acknowledged that he had pleaded guilty to the murder of Pardo and received a sentence of forty years' imprisonment in exchange for testifying against Gomez.

Forensic investigator Nolana Ortiz with the San Patricio County Sherriff's Department testified that she performed two cellphone data extractions after Gomez and his sister provided consent to search their phones. Investigator Ortiz testified that Gomez's cellphone had geographical data placing him at the scene of the crime, and exhibiting a change in elevation consistent with entering and exiting the ditch where Pardo's body was buried. The phone data extractions also showed text messages from

6

Gomez to his sister in the hours before and after the murder, which were admitted into evidence. Before the murder, Gomez texted his sister, "I'm going [to] do something stupid to get put on death row I can't take it anymore." After the murder, he texted his sister that he "did something stupid," that he would "be going to prison for a long time," "I committed a crime," and that the crime he had committed was "wors[e]" than burglary.

After both sides rested, the jury deliberated and returned a guilty verdict against Gomez for two counts of capital murder, as alleged in the indictment. *See id*. The trial court sentenced Gomez to life without the possibility of parole. *See id*. § 12.31(a)(2). This appeal followed.[2]

## II.     STANDARD OF REVIEW & APPLICABLE LAW

"A trial court's denial of a mistrial is reviewed for an abuse of discretion." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Under this standard, "we do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Becerra v. State*, 685 S.W.3d 120, 127 (Tex. Crim. App. 2024). A trial court abuses its discretion "when no reasonable view of the record support[s] [its] ruling," and "a trial court's ruling will only be reversed . . . if it is arbitrary or unsupported by any reasonable view of the evidence." *Id*. We must view "the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." *Ocon*, 287 S.W.3d at 884. We will

---

[2] On appeal, Gomez does not argue that his convictions violate the double jeopardy clause. *See* TEX. R. APP. P. 38.1(f) (requiring that an appellant "must state concisely all issues or points presented for review"); *see also id*. 38.1(i) (requiring that a brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

uphold the trial court's ruling if it is within the zone of reasonable disagreement. *See id.*

A mistrial is appropriate only in "'extreme circumstances' for a narrow class of highly prejudicial and incurable errors," and "must be determined by the particular facts of the case." *Id.* (citations omitted). "A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id*. (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). "Thus, a trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). "Because it is an extreme remedy, a mistrial should be granted 'only when residual prejudice remains' after less drastic alternatives are explored." *Ocon*, 284 S.W.3d at 884–85 (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)); *see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (noting that a mistrial is the trial court's remedy for improper conduct and when determining whether improper conduct is so harmful as to warrant reversal on appeal, we consider the prejudicial effect of the conduct, any curative measures taken, and the certainty of conviction absent the improper conduct).

"[A]n outburst from a bystander or witness 'which interferes with the normal proceedings of a trial will not result in reversible error unless the defendant shows that a reasonable probability [exists] that the conduct interfered with the jury's verdict.'" *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010) (quoting *Stahl v. State*, 749 S.W.2d 826, 829 (Tex. Crim. App. 1988) (en banc) (alterations in original)). When determining whether an outburst is sufficient to warrant mistrial, the Texas Court of Criminal Appeals

8

has considered several factors, including whether the outburst was made by a bystander or a witness, *see Stahl*, 749 S.W.2d at 829 & n.2; whether it was verbal or non-verbal, *see Landry v. State*, 706 S.W.2d 105, 112 (Tex. Crim. App. 1985); whether a verbal outburst contradicts the evidence or a legal defense or affects the credibility of testimony, *see Ashley v. State*, 362 S.W.2d 847, 851 (Tex. Crim. App. 1962); the timing of the outburst, *see Coble, 330 S.W.3d at 292*; the inflammatory effect of the outburst weighed against the strength of the evidence, *see Stahl*, 749 S.W.2d at 832; and how the trial court responded to the outburst. *See Landry*, 706, S.W.2d at 111–12; *Ashley*, 362 S.W.2d at 850. The appellant has the burden of establishing by "'competent evidence'" the probability of injury to himself as a result of the outburst. *Alfaro v. State*, 224 S.W.3d 426, 433 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (quoting *Williams v. State*, 651 S.W.2d 820, 822 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd)). Reversal is appropriate where "the record suggests that the outburst was of such a nature that the jury could not ignore it and fairly examine the evidence in arriving at a verdict." *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

Generally, "a trial court does not abuse its discretion in denying a mistrial based on the defendant's own misbehavior." *George v. State*, 446 S.W.3d 490, 503 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *see Babbs v. State*, 739 S.W.2d 646, 648 (Tex. App.—Houston [14th Dist.] 1987, no pet.) ("Texas has long refused to permit an accused to profit by his own misconduct to achieve a mistrial."); *see also Lozano v. State*, No. 07-22-00155-CR, 2023 WL 2865631, at *2 (Tex. App.—Amarillo Apr. 10, 2023, pet. ref'd) (mem. op., not designated for publication).

## IV. DISCUSSION

Gomez argues that the record shows prejudice sufficient to warrant a mistrial based on the altercation in the courtroom, including the conduct of Gomez, Espinoza, and bystanders, as well as the statements made by the trial court. Gomez argues that the visibility of the altercation, its timing, the "underwhelming weight of evidence at trial," and lack of sufficient curative measures by the trial court, all support reversal based on the prejudicial effect of the altercation.

Gomez has failed to show that a reasonable probability exists that his conduct or the conduct of any witness or bystander interfered with the jury's verdict. *See Coble*, 330 S.W.3d at 292. Gomez argues that the complained-of conduct was so "inherently prejudicial" in light of the "underwhelming weight of the evidence at trial" such that there is no "fair assurance" that the conduct "did not influence the jury, or had but a slight effect." As to verbal conduct, during the hearing on Gomez's motion for mistrial, defense counsel stated that an unidentified bystander said "you did it that's why you started the fight," or something to that effect, in front of the jury. This supposed statement from the bystander is not reflected in the reporter's record. Gomez summarily concludes that "[t]he bystander's verbal conduct asserted [Gomez]'s conduct demonstrated his guilt, thereby contradicting [Gomez]'s defensive theory while also bolstering [Mireles's] accomplice testimony claiming the same."

Gomez failed to request an instruction to disregard the complained-of conduct, to file a motion for new trial, to challenge the trial court's finding that the jury did not hear any verbal outburst, or otherwise attempt to supplement the record in support of his claim. *See Alfaro*, 224 S.W.3d at 433 (concluding that appellant failed to show improper

10

bystander conduct where appellant was assaulted by complainant's husband because appellant did not file a motion for a new trial, bill of exception, or show that the State improperly capitalized on the external influence, and overall "failed to produce 'competent evidence' that he was injured by the bystander's conduct"); *Ocon*, 284 S.W.3d at 885 ("Though requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, we will not reverse the court's judgment if the problem could have been cured by the less drastic alternative.").

Gomez did not assert any affirmative defense, and the State corroborated accomplice testimony with Gomez's own phone data, including geographical information and inculpatory text messages. Thus, this is unlike those situations where mistrial has been found appropriate in the face of underwhelming evidence or a hotly contested issue. *Compare Stahl*, 749 S.W.2d at 832 (affirming appellate court's reversal of appellant's murder conviction where the murder victim's mother had an outburst while testifying on the stand, in part, because "appellant was convicted of the offense in the face of a reasonably plausible and hotly contested self-defense claim"), *with Robinson v. State*, No. AP-76,535, 2013 WL 2424133, at *2–7 (Tex. Crim. App. June 5, 2013) (not designated for publication) (finding no abuse of discretion in trial court's denial of capital murder defendant's motion for mistrial after the victim's son-in-law attempted to assault him in the presence of the jury, reasoning that the "spectator's emotional expression of the family's grief and anger during the guilt phase was arguably inflammatory, but appellant has not demonstrated how, when weighed against the strength of the evidence, the outburst reasonably could have interfered with the jury's verdict"). Aside from Gomez's bare assertions as to prejudice, he has failed to point to anything in the record

11

indicating the complained-of conduct interfered with the jury's verdict. *See Coble*, 330 S.W.3d at 292; *Alfaro*, 224 S.W.3d at 433. Without more, "[n]othing in the record suggests that the outburst[s] w[ere] of such a nature that the jury could not ignore [them] and fairly examine the evidence in arriving at a verdict." *Gamboa*, 296 S.W.3d at 580.

The complained-of statements are not so inherently prejudicial that the trial court acted unreasonably in denying Gomez's motion for mistrial. *See Coble*, 330 S.W.3d at 291 (finding no abuse of discretion where trial court denied motion for mistrial where wife of appellant accused of killing wife's brother stated, "I hate you for making me go through this again and my kids. You're mean," and where appellant's cousin called him an "[e]vil piece of shit"); *Gamboa*, 296 S.W.3d at 580 (holding capital murder defendant not entitled to mistrial based on outburst by a victim's family member shouting, "You did this for 200 dollars?"); *see also Robinson*, 2013 WL 2424133, at *3 (finding no abuse of discretion in denial of motion for mistrial after victim's son-in-law attempted to assault appellant and yelled profanities at him in the presence of the jury). Nor did the State or trial court reference the altercation at any other point in the trial after it occurred. *See Stahl*, 749 S.W.2d at 832 (finding that a mistrial was warranted after a witness said inflammatory comments in front of the jury because the State repeatedly alluded to the outburst during closing argument in direct contravention of the trial court's prior ruling).

Gomez also argues that mistrial was warranted because of the trial court's statements following the events described above. After the altercation in the courtroom, the trial court informed the jurors that they would be in recess until the following day, commenting that: "And just as sure as I sa[id] this isn't anything like TV something like this happens and it's just like TV, it would [be] a great episode." The trial court also

ordered that the jury members be personally escorted to their vehicles, noting that their "safety is a paramount of importance to us and I want for y'all to feel safe and know that you are safe in your courthouse." At the hearing on Gomez's motion for mistrial the next day, conducted outside the presence of the jury, the trial court described the altercation as a "horrible scene." In denying Gomez's motion for mistrial, the trial court also noted that Gomez had refused to accept a plea agreement. After denying Gomez's motion for mistrial, the trial court ordered Gomez to be shackled by his feet and have his notepad and pen removed for the remainder of the trial. Gomez complains that the trial court's response "inadequately cure[d] the potential for improper jury influence" and was "inherently prejudicial," and that the trial court failed to "adequately control or instruct the jury" so as to ensure that the altercation did not interfere with the jury's verdict.

Gomez has not adequately preserved error for us to review his complaints regarding the trial court's conduct. Neither Gomez's written motion for mistrial nor defense counsel's argument at the hearing on the motion mention any conduct by the trial court as a basis for a mistrial. *See* TEX. R. APP. P. 33.1(a)(1)(A) (noting that, in order to preserve error, appellant must have "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint"); *see Unkart v. State*, 400 S.W.3d 94, 98 (Tex. Crim. App. 2013) ("Most appellate complaints must be preserved by a timely request for relief at the trial level.") (citing *Marin v. State*, 851 S.W.2d 275, 278 (Tex. Crim. App. 1993)). "Ordinarily, a complaint regarding an improper judicial comment must be preserved at trial." *Id*. at 99 (citing *Blue v. State*, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000) (plurality op.)).

Considering the record before us, we conclude that Gomez has failed to show that

a reasonable probability exists that the complained-of conduct interfered with the jury's verdict, and therefore, the trial court did not err in denying his motion for mistrial. *See Coble*, 330 S.W.3d at 292; *Alfaro*, 224 S.W.3d at 433; *see also Robinson*, 2013 WL 2424133, at *6. We overrule this issue.[3]

### V. CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
16th day of May, 2024.

---

[3] Gomez filed a pro se letter complaining of his appointed appellate counsel's failure to address the issue of the sufficiency of the evidence. Gomez is represented by appointed counsel in this appeal, and counsel has filed a brief in compliance with the rules. A criminal defendant is not entitled to hybrid representation. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007); *Ex parte Taylor*, 36 S.W.3d 883, 887 (Tex. Crim. App. 2001) ("Appellants are not allowed to have 'hybrid representation' on appeal, in which an appellant and an attorney can present independent points to an appellate court."); *see also United States v. Villafranca*, 844 F.3d 199 (5th Cir. 2016). Accordingly, we do not consider Gomez's pro se filings here. *See Robinson*, 240 S.W.3d at 922.